MARGARET KOPAK, PLAINTIFF-RESPONDENT, v. FRED POLZER, DEFENDANT-APPELLANT.

Argued March 20, 1950—Decided April 24, 1950.

*Mr. Jack Rinzler* argued the cause for the appellant (*Messrs. Feder & Rinzler,* attorneys).·

*Mr. Samuel D. Joseph* as *amicus curiæ* argued the cause at the request of the Court for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J. ▄▄▄ This Court granted the defendant's petition for certification of the judgment of the Appellate Division of the Superior Court reversing a judgment of the First Criminal Judicial District Court of Passaic County dismissing the plaintiff's complaint. Thereafter the plaintiff sought to withdraw from the appeal, but we denied her motion because of the interest of her child in the appeal and instructed her counsel to argue the cause as *amicus curiæ,* using the brief he had filed in opposition to the defendant's petition for certification.

The plaintiff and defendant are the mother and father respectively of an illegitimate child, the custody of which is now and has always been with the plaintiff. In June, 1938, shortly after the child was born, the Overseer of the Poor of Clifton, at the instance and on the declaration of the plaintiff here, commenced filiation proceedings against the defendant under the provisions of *R. S.* 9 :17–2. The defendant entered a plea of guilty, whereupon an order was made directing him to pay $3 per week for the support of the child as well as $50 for confinement expenses and to post a bond of $500 to secure compliance with the filiation order. The defendant complied with the order.

Subsequently on September 26, 1940, the plaintiff and the defendant entered into an agreement whereby upon the payment of a lump sum of $400 by the defendant to the plaintiff the filiation bond should be discharged of record and the defendant released by the plaintiff-mother from any order for support under the filiation order. On application to the Court an order was entered releasing the defendant "from any further order for support and maintenance under a filiation order

heretofore signed by me in this cause" and discharging the bond of record. The Overseer of the Poor consented to the order "without prejudice to the interest of Clifton under the poor and/or relief laws and to any future court action deemed necessary to protect the interests of said City by the Overseer of the Poor."

On November 1, 1948, the plaintiff-mother commenced the present action for the purpose of compelling the defendant to provide for the maintenance of their child in the First Criminal Judicial District Court of Passaic County under *R. S.* 9:16–2, 3, which provide:

"9:16–2. A child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock.

"9:16–3. Proceedings to enforce the obligations imposed by section 9:16–2 of this title may be maintained by one parent against the other, or by the person having physical custody of the child, or, if the child is or is likely to become a public charge, the proceedings may be instituted by the overseer of the poor of the municipality or municipalities where the father and mother, or either of them, reside. In such proceedings consideration shall be given to the age of the child and the ability and financial condition of the parent or parents.

"Jurisdiction of proceedings hereunder shall be had by the magistrates or courts exercising jurisdiction in bastardy proceedings pursuant to chapter 17 of this title (§ 9:17–1 *et seq.*)."

The Court dismissed the complaint on the ground that, although the mother of an illegitimate child may not release the rights of the child against the father for support, she was precluded from making an application for support against the father by virtue of the release earlier given by her to the father in 1940. The release is not before us except as it may be inferred from the order of September 26, 1940. On appeal the Appellate Division of the Superior Court reversed the judgment of the trial court and remanded the case for a new trial.

The defendant's first contention on this appeal is that the order of September 26, 1940, in the previous proceeding under *R. S.* 9:17–2, is a bar to the present complaint made under the provisions of *R. S.* 9:16–2, 3. This contention is obviously without merit for it is specifically provided in *R. S.*

9:16–4 that "the remedy given by sections 9:16–2 and 9:16–3 of this title shall be deemed cumulative as to remedies contained in chapter 17 of this title (9:17–1 *et seq.*)." The defendant's assertion that "the Legislature did not provide that a parent may be jeopardized by dual proceedings" flies into the face of this express provision of *R. S.* 9:16–4 to the contrary and must therefore fail.

The argument is next made that the present proceeding is defective in that the action is brought by the mother on her own behalf and is not an action on behalf of her illegitimate child. This contention likewise cannot prevail in the light of *R. S.* 9:16–3: "Proceedings to enforce the obligations imposed by section 9:16–2 of this title may be maintained by one parent against the other, or by the person having physical custody of the child." There is no requirement, as the defendant would have us imagine, that the action must be brought by the parent in a representative capacity. The statute makes it quite clear that the action by a parent is for the benefit of the child under the statute.

The third argument made here is that the Appellate Division erred in giving the plaintiff a second opportunity to give evidence that she refused to present at the trial. This argument is not supported by the record. There was no refusal of the plaintiff to offer evidence. The trial court held as a matter of law that the mother's release effectively barred her right to contribution for the support of the child. The trial court then went on to say that "Should the child become a charge on the community, it is my opinion that the release given in the instant case would have no effect as against the interest of the community. Further, should counsel for the complainant desire to submit additional evidence and have the release marked, an opportunity will be afforded upon request." The plaintiff made no such offer, and understandably so, in view of the trial court's ruling. Admittedly the plaintiff was not destitute and there was no present danger of the child becoming a public ward. In view of the trial court's decision that the release barred contribution unless the com-

munity had an interest, there was no evidence that the plaintiff could introduce. Counsel could only assume that the trial court had not left open the door for the admission of testimony on such factors as the age of the child and the ability and financial condition of the parent or parents, factors which *R. S.* 9:16–3 provides will be given consideration in such proceedings. The effect of the Appellate Divison's decision is not, therefore, to permit the plaintiff to do what she neglected to do at the trial, but to permit her to do what the statute gave her the right to do, but which she was prevented from exercising by the trial court's view of the law.

The defendant states that the real question in this case "is whether * * * the parents may agree as between themselves, to relieve one of them of duty to support the child in the absence of any evidence tending to show that (a) the complaint was brought for the benefit of the child; (b) the child is a public charge; (c) the mother is destitute and financially unable to support the child; (d) the mother is unwilling to support the child; or (e) the child is in need of support by its father." We have already substantially answered this question, but there are two additional observations that should be made. First, the plaintiff in the instant case gave no release as to future rights of contribution from the defendant. The order of September 26, 1940, referring to the release, provided "that the defendant, Fred Polzer, be and he is herewith released from any further order for the support and maintenance under a filiation order heretofore signed by me in this cause." There is nothing in the order that contemplates a release of rights *in futuro,* nor could there properly be, keeping in mind the public interest not merely in having the child supported but properly educated. Second, even if the release had so provided, it would not constitute a bar to any future modifications of the order; it is well recognized that support orders are not, and by their very nature cannot be final; *R. S.* 2:50–37, which provides for the care, custody, education and maintenance of children of divorced parents, states that "orders so made may be revised and altered

by the court from time to time as circumstances may require;" R. S. 9:16–2 states that a child born out of wedlock is entitled to support and education to the same extent as if born in wedlock; and our courts have held a legitimate child cannot be prejudiced by an agreement between parents, *Zirk v. Nohr*, 125 *N. J. L.* 610 (*Sup. Ct.* 1941); affirmed, 127 *N. J. L.* 217 (*E. & A.* 1941); *Rennie v. Rennie*, 85 *N. J. Eq.* 1 (*Ch.* 1915). It can hardly be seriously asserted that by a settlement of $400 the child here, entitled by statute to the rights of any other child to care, education and maintenance, is forever precluded from receiving support from its father, unless the same is necessary to keep it from becoming a burden on the community. A reading of the statutes plainly shows a contrary legislative intent.

The judgment of the Appellate Division of the Superior Court is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD and BURLING—6.

*For reversal*—None.