944 A.2d 654 (2008)
399 N.J. Super. 295
Linda Lavin GOTLIB, Plaintiff-Respondent/Cross-Appellant,
v.
Jonathan GOTLIB, Defendant-Appellant/Cross-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 11, 2007.
Decided March 27, 2008.
*656 Franzblau Dratch, attorneys for appellant/cross-respondent (Patrick T. Collins, on the brief).
Marcia L. Hendler, attorney for respondent/cross-appellant (Carolyn T. Hendler, on the brief).
Before Judges COBURN, FUENTES and GRALL.
The opinion of the court was delivered by FUENTES, J.A.D.
Plaintiff, Linda Lavin Gotlib, moved before the Family Part seeking post-judgment *657 relief in the form of an order directing defendant Jonathan Gotlib to: (1) reimburse her for his one-half share of the children's un-reimbursed medical expenses, as arguably required under the final Judgment of Divorce (JOD); and (2) to pay his proportionate share of the children's college expenses, as required by the JOD.
Plaintiff also sought a judicial declaration that defendant did not have the right to assign the mortgage he received under the JOD, which is secured by the former marital residence; and that the assignee, Nicholas E. Purpura, is not a holder in due course of this instrument. Finally, plaintiff requested that the court award her counsel fees incurred in the prosecution of this motion.
The motion judge granted plaintiff's request concerning the children's un-reimbursed medical expenses and the children's college expenses. The court denied, however, the remainder of plaintiff's requests, finding that defendant, as mortgagee, retained the legal right to assign the mortgage; the court further held that the assignee of the mortgage was a holder in due course; and denied plaintiff's application for counsel fees and costs.
Defendant now appeals, arguing that the court erred in holding that plaintiff retained her right to require him to pay un-reimbursed medical expenses and by failing to apply the relevant legal factors in calculating his obligation to contribute to his children's college expenses.
Plaintiff cross-appeals, challenging the court's decisions: permitting defendant to assign the mortgage secured by the former marital residence, conferring upon the mortgage assignee the legal status of holder in due course and denying her application for counsel fees and costs.
After reviewing the record before us, and in light of prevailing legal standards, we affirm the trial court's ruling finding that plaintiff retained the right to seek reimbursement from defendant for his share of the children's medical expenses not covered by medical insurance. We hold that a parent's obligation to pay un-reimbursed medical expenses should be deemed by a court reviewing a motion to enforce litigant's rights as an essential benefit to the parties' children. In this light, the right to receive these payments belongs to the children, and is therefore not subject to waiver by a custodial parent. The non-custodial parent from whom reimbursement is sought retains the right to question the reasonableness of any individual medical expense.
We reverse the court's ruling concerning the children's college education, and remand for the trial court to make factual findings, after conducting a plenary hearing, guided by the factors outlined in Gac v. Gac, 186 N.J. 535, 897 A.2d 1018 (2006) and Newburgh v. Arrigo, 88 N.J. 529, 443 A.2d 1031 (1982).
On the issue concerning the mortgage held by defendant on the former marital residence, we affirm the court's ruling upholding defendant's right of assignment, but reverse the ruling conferring holder in due course status on the assignee. Finally, we affirm the court's denial of plaintiff's application for counsel fees.
We examine these issues in the context of the factual record developed before the trial court.

I
The parties were married on March 6, 1982. They had three children: Aaron, born May 3, 1986; Rebecca, born September 17, 1987; and Zachary, born October 7, 1990. After fourteen years of marriage, the parties divorced. The trial dissolving *658 the marriage lasted a total of forty-nine days. The court granted plaintiff legal and residential custody of the children; defendant was awarded parenting time. The JOD contemplated, however, that both parents would remain significantly involved in the children's lives. Toward that end, paragraph five of the JOD specifically provides as follows:
The plaintiff shall have the affirmative obligation [to] consult with defendant with regards to the children on issues before the event is to occur relating to medical, dental, therapeutic, educational, religious, recreational, school and camp needs, except in the event of an emergency. The defendant shall have the right to render his opinion. In the event of a disagreement, the plaintiff will have the right to [make] the ultimate decision.
Both parties are attorneys. Although at the time of the divorce defendant was unemployed, the court imputed income to him in the amount of $125,000. Based on this imputed income, defendant was required to pay $352 per week in child support. After the entry of the JOD, defendant claims he developed "Chronic Fatigue Syndrome" and became totally disabled. He certified that he began receiving Social Security disability benefits in 1997; based on this change in his financial condition, his child support obligation was reduced to $109 per week.

II

Medical Expenses
With respect to medical expenses involving the children, the JOD provides as follows:
29. . . . The parties shall be equally responsible to provide for the children's medical, dental, orthodontial, opthalmological, or pharmaceutical expenses that are not covered by the health insurance. The plaintiff shall advance such sums. On the first day of each month, the plaintiff shall forward to the defendant, by regular mail and certified mail, return receipt requested, copies of all bills incurred for the children for which she seeks contribution, as well as the calculations of the monies due. The defendant may consult with the providers of services, as he cares to. He shall reimburse the plaintiff his 50% share thereof within thirty days of receipt by him of the bills.
On September 8, 1996, plaintiff sent defendant a letter enclosing copies of medical bills from March through September. She requested that defendant assume responsibility for half of the total or $1179.25. When he failed to do so, plaintiff moved to enforce litigant's rights demanding reimbursement. By order dated June 13, 1997, the court directed defendant to pay plaintiff $3454.76[1] for medical expenses; a second order dated July 14, 1997 directed defendant to pay plaintiff $388.55, also for medical expenses. Plaintiff claims defendant has failed to comply with both of these orders.
On February 2, 1999, plaintiff sent defendant a letter requesting $1050 for orthodontist expenses and $504 for dental work; these medical expenses related to the children. By letter dated March 22, 1999, plaintiff again wrote to defendant requesting payment for the expenses outlined in her February 2, 1999 letter. In this letter, plaintiff also requested payment *659 of one-half of the children's medical insurance premiums amounting to $1748.10 for 1998 and $367.90 for the coverage period from January and February of 1999.
On April 19, 1999, plaintiff sent defendant a third letter requesting payment as previously discussed in her February and March letters. Plaintiff also sent an undated letter requesting $5866.25 for medical expenses; $241.25 for eye care bills, $750 for psychologist bills, and $4875 for other bills that were attached. Again, all of these expenses related to the children.
In total, plaintiff demanded payment from defendant in the amount $23,397.73; this figure constitutes un-reimbursed medical expenses, $3843.31 which the court had previously ordered defendant to pay. Broken down by category, plaintiff claims defendant owes her $5475 for the children's orthodontial bills, $4878.70 for the children's dental bills, $349 for the children's opthamological bills, $1776.72 for Rebecca's physical therapy and co-payments for medicine, and $7705.00 for Aaron's psychological bills.
In response, defendant argues that plaintiff failed to deduct insurance reimbursements from the medical bills; the bills were not delivered to him on a monthly basis; and plaintiff did not consult him or seek his input on the need for these medical services, as required by the JOD. By way of example, defendant claims plaintiff purchased the children braces, which he cannot afford, switched Aaron's psychologist and took the children to various other doctors without consulting with him or even notifying him.
Additionally, defendant claims he is entitled to a credit for the child support he paid plaintiff during the twenty-month period of time Aaron lived with him during 2001 and 2002. He contended that he should also be credited for paying Aaron's psychological bills and prescription treatments; and for other unspecified medical expenses he paid for the other children.
In ruling in plaintiff's favor, the motion judge made the following findings.
Plaintiff's request that the Court enforce litigant's rights and order the Defendant to comply with the Judgment of Divorce by requiring the Defendant to pay to the Plaintiff his one-half share in the amount of $23,397.73 for the parties' children's un-reimbursed medical expenses is hereby GRANTED. Pursuant to paragraph 29 of the parties' Dual Final Judgment of Divorce entered December 16, 1993, the Defendant shall reimburse the Plaintiff his fifty percent (50%) share of any un-reimbursed medical expenses within thirty days of receipt by him of the bills. The Defendant was previously ordered on June 13, 1997 and July 14, 1997 to pay his share of un-reimbursed medical expenses totaling $3,843.31. The plaintiff provides proof of un-reimbursed medical expenses not previously addressed by the court totaling $19,554.42. Therefore, the Defendant shall reimburse the Plaintiff the amount of $23,397.73 within thirty (30) days of the stamped file date of this Order.
In a supplemental decision rendered pursuant to R. 2:5-1(b), the motion judge re-emphasized the parties' obligation, under the JOD, to divide equally any medical expenses not covered by insurance. The court again noted that plaintiff provided defendant with proof of bills and calculations as to how she arrived at the amount due. The court stated that it ordered defendant to pay one-half of the $23,397.73 demanded by plaintiff, "[b]ased upon [plaintiff's] certification that she provided the necessary notice and the attached exhibits of letters to the Defendant regarding medical bills and copies of medical bills."

*660 III

Legal Analysis on the Question of Medical Expenses
Defendant argues that plaintiff waived her right to enforce the JOD's clear provisions requiring each party to pay one-half of the children's un-reimbursed medical expenses because she did not consult with him before the children visited certain physicians, and did not bill him on a monthly basis, as required by the JOD. We disagree.
"Waiver is the voluntary relinquishment of a known right. It `implies an election by the party to dispense with something of value, or to forego some advantage which [that party] might have demanded and insisted on.'" Clarke v. Clarke ex rel. Costine, 359 N.J.Super. 562, 571, 821 A.2d 104 (App.Div.2003) (citing W. Jersey Title & Guar. Co. v. Indus. Trust Co., 27 N.J. 144, 152, 141 A.2d 782 (1958)). It "must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based." Petrillo v. Bachenberg, 263 N.J.Super. 472, 480, 623 A.2d 272 (App.Div.1993), aff'd 139 N.J. 472, 655 A.2d 1354 (1995) (citing Country Chevrolet v. N. Brunswick Planning Bd., 190 N.J.Super. 376, 380, 463 A.2d 960 (App.Div.1983)).
In Clarke, supra, the court rejected defendant's contention that plaintiff waived her right to alimony and enforced twenty years of alimony arrears totaling $118,700. 359 N.J.Super. at 565, 570-71, 821 A.2d 104. Plaintiff and defendant divorced in 1976 and the court awarded plaintiff one hundred dollars per week in alimony. Id. at 565, 821 A.2d 104. Initially plaintiff filed "numerous motions" seeking enforcement of her alimony award; but in 1978 she discovered defendant had left the country and she did not file any additional enforcement motions for several years. Id. at 565-66, 821 A.2d 104. In the 1980s plaintiff dropped the warrant against defendant in exchange for a promise that he would pay his alimony arrears. Id. at 566, 821 A.2d 104. Defendant did not keep his promise, but plaintiff filed no other enforcement motions until after defendant's death on August 29, 2001, when she sought $118,700 in alimony arrears from defendant's estate. Ibid. The court rejected defendant's assertion that plaintiff had waived her right to alimony because "[p]laintiff's inaction was the result of frustration as much as anything else." Id. at 571, 821 A.2d 104.
"It is fundamental that the right to child support belongs to the child and may not be waived by a custodial parent." L.V. v. R.S., 347 N.J.Super. 33, 41, 788 A.2d 881 (App.Div.2002) (citing Kopak v. Polzer, 4 N.J. 327, 333, 72 A.2d 869 (1950); Martinetti v. Hickman, 261 N.J.Super. 508, 512, 619 A.2d 599 (App.Div.1993); Savarese v. Corcoran, 311 N.J.Super. 240, 246, 709 A.2d 829 (Ch.Div.1997), aff'd, 311 N.J.Super. 182, 709 A.2d 799, (App.Div.1998)). Even an explicit waiver agreement can not vitiate a child's right to support. See e.g. Kopak, supra, 4 N.J. at 327, 72 A.2d 869 (release signed by mother eight years earlier did not waive child's right to support); Martinetti, supra, 261 N.J.Super. 508, 619 A.2d 599 (parents' agreement in a consent order that support would end when daughter turned eighteen did not waive daughter's right to support beyond her eighteenth birthday).
In L.V., supra, plaintiff did not seek child support until her daughter reached the age of sixteen and the trial court barred plaintiff's claim on grounds of laches. 347 N.J.Super. at 38-39, 788 A.2d 881. The appellate division found that the bar of laches would be applicable to deny plaintiff's claim; but it reversed the trial court's decision since "there is no basis to *661 impute to a child the custodial parent's negligence, purposeful delay or obstinacy so as to vitiate the child's independent right of support from a natural parent." Id. at 39-40, 788 A.2d 881 (citing Perez v. Singh, 21 Cal.App.3d 870, 97 Cal.Rptr. 920 (1971); Ellison v. Walter ex rel. Walter, 834 P.2d 680 (Wyo.1992)).
Here, the record shows that plaintiff attempted on numerous occasions to collect un-reimbursed medical expenses from defendant. It is equally clear that plaintiff did not comply with the provision in the JOD requiring her to submit reimbursement requests on the first day of each month; nor is there any evidence that she consulted with defendant prior to incurring these expenses.
Similar to the plaintiff in Clarke, supra, plaintiff's inaction here can be viewed as "the result of frustration as much as anything else." 359 N.J.Super. at 571, 821 A.2d 104. Plaintiff initially attempted to collect the un-reimbursed medical expenses by writing defendant letters. Despite plaintiff's efforts, the defendant ignored not only her letters, but also two court orders requiring defendant reimburse plaintiff for medical expenses.
Furthermore, payments to offset un-reimbursed medical expenses are intended to provide essential benefits to the parties' children. In this light, the right to receive these payments belongs to the children, and is therefore not subject to waiver by a custodial parent. See L.V., supra, 347 N.J.Super. at 41, 788 A.2d 881 (citing Kopak, supra, 4 N.J. at 333, 72 A.2d 869; Martinetti, supra, 261 N.J.Super. at 513, 619 A.2d 599; Savarese, supra, 311 N.J.Super. at 246, 709 A.2d 829). Stated differently, even in the face of plaintiff's failure to abide strictly to the provisions of the JOD requiring her to discuss the children's doctor visits with defendant prior to incurring expenses for services rendered, or her failure to bill the defendant on a monthly basis, a court reviewing a motion to enforce litigant's rights may not "impute to a child the custodial parent's negligence, purposeful delay or obstinacy so as to vitiate the child's independent right of support from a natural parent." Id. at 40, 788 A.2d 881 (citing Perez, supra, 21 Cal. App.3d 870, 97 Cal.Rptr. 920; Ellison, supra, 834 P.2d 680).
A parent from whom financial contribution is sought nevertheless retains the right to challenge the reasonableness of the medical expenses. Cooperation, discussion and consultation should be the guiding principles in any decision involving the welfare of the parties' children. In deciding what type of medical treatment is required, the need for the parties to behave and act like parents is paramount. This may require them to subordinate their adversarial interests as litigants in favor of their children's welfare.
Some of the relevant questions to be addressed when considering the reasonableness of a reimbursement request are: (1) was the treatment medically necessary; (2) was the medical treatment in response to an unforeseen emergency requiring immediate action; (3) did the treatment involve elective or cosmetic medical services, and if so, was it in the best interest of the child involved to undergo such treatment; and (4) in cases of elective or cosmetic medical treatment, was the decision economically sound, given the parties' financial resources. This list is by no means an exhaustive recitation of the issues to be considered in every case. These cases are, by necessity, factually sensitive. A proper resolution requires careful attention to the salient facts.

IV

College Expenses
On the question of the children's post-secondary education, the JOD provides, in pertinent part, as follows:

*662 34. Both parties shall contribute to the college costs of the children in accordance with appropriate legal standards.
35. Both parents shall have full input on the college or other institution that the child will attend with the child involved.
Aaron attended Curry College from 2003 to 2004, for a total cost of $34,542.19. Plaintiff claims defendant owes her $17,271.05, representing his one-half share. Defendant contends that he was never consulted prior to the decision that Aaron would attend this "extraordinarily expensive" private school; he nevertheless contributed about $5000 toward Aaron's attendance at Curry. Defendant also certifies that he has provided his son with a $150 monthly allowance since he began college.
In 2004, Aaron transferred to Rutgers University; the cost of the 2004-2005 term was $13,265.30. Unlike the situation with Curry College, defendant participated in Aaron's decision to transfer to Rutgers. Plaintiff claims defendant owes her $6632.65, representing one-half of this tuition for the 2004-2005 academic year; and an additional $6632.65 for the 2005-2006 term. She also requested an additional $6632.65 be held in trust for Aaron's final year of school. Defendant claims that plaintiff has refused to permit Aaron to "maximize all loans and grants that might be available."
Rebecca moved to Israel and began attending Ba'er Miriam Yeshiva in the fall of 2005. Plaintiff requests one-half of the $16,800 tuition or $8400. For the fall of 2006, the tuition was $33,980; plaintiff requested $16,990.[2] She also requests an additional $33,980 be held in trust to cover Rebecca's final two years of school. Defendant claims he had no knowledge and was never consulted about Rebecca's decision to attend school in Israel. He also asserts that plaintiff has refused to permit Rebecca to "maximize all loans and grants that might be available."
Zachary will not begin college for another four years. Plaintiff requested that the court require defendant to place $44,000 in trust for Zachary's estimated, future college expenses.

V

Legal Analysis as to College Expenses
Defendant argues that, based on the record developed, the motion judge erred in finding that the parties should equally contribute to the children's higher education expenses. We agree.
In addressing this issue, the trial court has substantial discretion. Foust v. Glaser, 340 N.J.Super. 312, 315, 774 A.2d 581 (App.Div.2001) (citing Pascale v. Pascale, 140 N.J. 583, 594, 660 A.2d 485 (1995)). Therefore, if the award is consistent with the law the award "will not be disturbed unless it is `manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" Id. at 315-16, 774 A.2d 581 (quoting Raynor v. Raynor, 319 N.J.Super. 591, 605, 726 A.2d 280 (App.Div.1999)). Nonetheless, if the court ignores applicable standards, we are compelled to reverse and remand for further proceedings.
In Gac, supra, the Supreme Court noted that "[t]he Legislature and our courts have long recognized a child's need for higher education and that this need is a proper consideration in determining a parent's child support obligation." 186 N.J. at 542, *663 897 A.2d 1018. In Newburgh, the court set forth a non-exhaustive list of twelve factors the court should consider when evaluating a claim for contribution. Id. at 543, 443 A.2d 1031 (citing Newburgh, supra, 88 N.J. at 545, 443 A.2d 1031). The Legislature codified these factors in N.J.S.A. 2A:34-23(a):
(1) Needs of the child; (2) Standard of living and economic circumstances of each parent; (3) All sources of income and assets of each parent; (4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment; (5) Need and capacity of the child for education, including higher education; (6) Age and health of the child and each parent; (7) Income, assets and earning ability of the child; (8) Responsibility of the parents for the court-ordered support of others; (9) Reasonable debts and liabilities of each child and parent; and (10) Any other factors the court may deem relevant.
A reviewing court's decision should not be based on any single factor. Rather, the judge has "an obligation under Newburgh and N.J.S.A. 2A:34-23(a) to consider all the enumerated factors." Raynor, supra, 319 N.J.Super. at 617, 726 A.2d 280. In Gac, supra, the court discussed the obligation of the parent or child seeking contribution, to communicate with the other parent and allow him or her to participate in the decision about what college the child will attend. 186 N.J. at 546, 897 A.2d 1018. The court emphasized that "[a]t a minimum, a parent or child seeking contribution should initiate the application to the court before the expenses are incurred. The failure to do so will weigh heavily against the grant of a future application." Id. at 547, 897 A.2d 1018.
Here, the motion judge ordered defendant to pay plaintiff one-half of the children's higher education expenses, amounting to $55,926.35, within thirty days of his order. This figure included monies previously paid by plaintiff, as well as expenses that were due in August 2005 for the fall 2005-2006 semester.
The JOD is silent as to how the parties would divide higher education expenses; the provision merely stated that "[b]oth parties shall contribute to the college costs of the children in accordance with appropriate legal standards." In arriving at his decision, the motion judge did not address the Newburgh and statutory factors reflected in N.J.S.A. 2A:34-23(a). The court simply appears to have divided the expenses equally. This approach is not sustainable. See Raynor, supra, 319 N.J.Super. at 617, 726 A.2d 280.
Of particular concern to us is the court's failure to address plaintiff's decision to seek contribution from defendant long after these expenses had been incurred, thereby excluding him from the decision making process of whether his son should attend Curry College or whether his daughter should attend Ba'er Miriam Yeshiva, both private schools. See Gac, supra, 186 N.J. at 546-47, 897 A.2d 1018. Participation by both parents is an essential factor under Gac, expressly required by the JOD, and should have "weigh[ed] heavily against the grant of a future application." See id. at 547, 897 A.2d 1018.[3]
For these reasons, we reverse the trial court's order directing defendant to pay *664 one-half of the children's college expenses, and remand this issue for further proceedings consistent with this opinion.

VI

Defendant's Assignment of Mortgage
Under the terms of the JOD, defendant was directed to convey to plaintiff his equitable distribution interest in the marital residence. To secure his interest, the court ordered that defendant be given a recordable lien interest, subordinate only to the first mortgage. Toward this end, paragraph thirty-eight of the JOD provides as follows:
On or before January 15, 1994 the defendant shall convey all of his right, title and interest in and to the marital premises to the plaintiff . . . Defendant shall be entitled to receive a mortgage back from the plaintiff in an amount hereinafter described, with terms as hereinafter set forth.
After determining the marital residence's net equity, the court provided the following mortgage terms:
Conveyance to the plaintiff shall be free and clear of all liens and encumbrances except for the first mortgage. If there are judgments or liens against the defendant, they shall be satisfied and deducted from the monies due defendant. Therefore, subject to judgments, liens or encumbrances, the defendant shall be entitled to a second mortgage in the sum of $23,750.00. The mortgage shall bear simple interest at 6% per annum, there being no payments of principal or interest by the plaintiff until Rebecca graduates high school, or until the Carson Avenue Residence is sold, whichever earlier occurs.
The parties executed a mortgage instrument on September 16, 1994. The mortgage was first postponed on September 19, 1994. Next, on October 4, 1994 the mortgage was modified, and the United States Bankruptcy Court fixed the principal balance at $23,000. The parties signed another mortgage on January 23, 1995. That mortgage expressly stated that plaintiff agreed to give defendant "rights the law gives to lenders who hold mortgages on real property." It also stated that plaintiff agreed "[i]n accordance with the [JOD], Mortgage Note, I promise to pay in accordance with the [JOD] 12/16/93."
Defendant assigned the mortgage to Nicholas E. Purpura in exchange for $7000. The assignment of mortgage was recorded on August 13, 1998. On May 17, 2005, plaintiff received a letter from Purpura, informing her of the assignment. The letter stated, in pertinent part, as follows:
Under the terms of the Note recorded in Middlesex County, NJ on September 19, 1994 you are obligated to pay the sum of $45,549.84 no later than the sale of the property or when Rebecca Gotlib graduates from High School, whichever occurs first . . . Please contact us at the address above, to arrange prompt payment.
Rebecca graduated from high school in June 2005, which triggered plaintiff's obligation to pay the mortgage under the JOD. There is general disagreement about the present balance of the mortgage. Defendant claims the present balance is $40,319.04; the letter from Purpura asserts the sum of $45,549.84; plaintiff disagrees with Purpura's calculation.

VII

Legal Analysis of Mortgage Assignment
Plaintiff argues that defendant had no right to assign the mortgage because: *665 (1) the mortgage specifically states that the parties have to agree to changes to the mortgage; (2) the JOD did not grant defendant the right of assignment; and (3) the parties did not execute an underlying note to the mortgage. We conclude that defendant retains the right of assignment.
A mortgage secures a debt; "without an obligation to secure there can be no valid mortgage." Mardirossian v. Wilder, 76 N.J.Super. 37, 41, 183 A.2d 761 (Ch.Div.1962) (citing 36 Am.Jur., Mortgages, § 58, p. 718). The debt may be evidenced by a separate writing, such as a bond or a note; however, such a document is not legally required. See Vreeland v. Dawson, 55 N.J.Super. 456, 465, 151 A.2d 62 (Ch.Div.1959). If there is a note or other obligation that the mortgage secures then "an attempted assignment of a mortgage, apart from the debt, is a nullity, a mortgage by itself not being a fit subject for assignment." 55 Am.Jur.2d Mortgages § 1002 (2007). This is so, because a mortgage secures a debt and the mortgagee before foreclosure has no interest in the mortgaged property that he can convey, unless he simultaneously transfers the debt the mortgage secures. Ibid.
Under N.J.S.A. 46:9-9:
All mortgages on real estate in this State, and all covenants and stipulations therein contained, shall be assignable at law by writing, whether sealed or not, and any such assignment shall pass and convey the estate of the assignor in the mortgaged premises, and the assignee may sue thereon in his own name, but, in any such action by the assignee, there shall be allowed all just set-offs and other defenses against the assignor that would have been allowed in any action brought by the assignor and existing before notice of such assignment.
An assignee of a mortgage has no greater rights than the assignor; he "succeeds to the rights and privileges, as well as to the disabilities of the assignor." Gerrold v. Penn Title Ins. Co., 271 N.J.Super. 50, 54, 637 A.2d 1293 (App.Div.1994) (citing Byram Holding Co. v. Bogren, 2 N.J.Super. 331, 336, 63 A.2d 822 (Ch.Div. 1949)). An assignment alone does not alter the "contractual stipulations legitimately included in a mortgage instrument." S.D. Walker, Inc. v. Brigantine Beach Hotel, Corp., 44 N.J.Super. 193, 207, 129 A.2d 758 (Ch.Div.1957). Thus, the motion judge's holding that defendant's assignment of the mortgage was valid and enforceable is well-supported by the applicable law.
However, we find no support for the trial court's adjudication of the question of whether the assignee of the mortgage is entitled to the status of a holder in due course, as that term is defined in N.J.S.A. 12A:3-302(a). First, we note that the assignee was not a party in the proceedings before the trial court. Although plaintiff mentioned at oral argument that she notified Purpura about her initial motion, the record is devoid of any evidence that actual written notice was even provided to him.
Here, plaintiff sought declaratory relief under N.J.S.A. 2A:16-52. "When declaratory relief is sought, all persons having or claiming any interest which would be affected by the declaration shall be made parties to the proceeding." N.J.S.A. 2A:16-56. The court cannot adjudicate the rights of parties who are not before the court. Central Penn Nat'l Bank v. Stonebridge, Ltd., 185 N.J.Super. 289, 300, 448 A.2d 498 (Ch.Div.1982) (citing Carolina Cas. Ins. Co. v. Belford Trucking Co., 116 N.J.Super. 39, 43-44, 280 A.2d 848 (Ch.Div.1971), aff'd 121 N.J.Super. 583, 298 A.2d 288 (App.Div.1972)). A non-party "remains unaffected by any such *666 judgment." Tal v. Franklin Mut. Ins. Co., 172 N.J.Super. 112, 116, 410 A.2d 1194 (App.Div.), certif. denied, 85 N.J. 103, 425 A.2d 267 (1980) (citing N.J.S.A. 2A:16-57). Additionally, the court's ability to issue a declaratory judgment should not be used to obtain advisory opinions. Civil Serv. Comm'n. v. Senate of New Jersey, 165 N.J.Super. 144, 148, 397 A.2d 1098 (App. Div.) certif. denied, 81 N.J. 266, 405 A.2d 811 (1979) (quoting Lucky Calendar Co. v. Cohen, 36 N.J.Super. 300, 304, 115 A.2d 603 (Law Div.1955), aff'd 20 N.J. 451, 454, 120 A.2d 107 (1956); Miller v. Twp. of Wayne, 154 N.J.Super. 247, 381 A.2d 94 (Law Div.1977)).
Under these circumstances, the trial court's declaratory judgment as to Purpura's rights under the mortgage assignment cannot stand.

VIII

Counsel Fees
Plaintiff argues that the trial court erred in not granting her request for counsel fees and costs. We disagree and affirm this ruling.
Rule 4:42-9(a)(1) authorizes the award of counsel fees in a family action on a final determination pursuant to R. 5:3-5(c). In determining the amount of the fee the court should consider these factors:
(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
[R. 5:3-5(c).]
"The application of these factors and the ultimate decision to award counsel fees rests within the sound discretion of the trial judge." Loro v. Colliano, 354 N.J.Super. 212, 227, 806 A.2d 799 (App. Div.), certif. denied, 174 N.J. 544, 810 A.2d 64 (2002) (citing Yueh v. Yueh, 329 N.J.Super. 447, 460, 748 A.2d 150 (App.Div.2000); Guglielmo v. Guglielmo, 253 N.J.Super. 531, 544-45, 602 A.2d 741 (App.Div.1992)).
As the review of the issues raised here illustrates, there is no evidence that defendant's position here was unreasonable or lacked good faith. Indeed, defendant has prevailed on the key issue involving the children's education. We therefore discern no legal basis to interfere with the trial court's ruling in this respect.

IX

Conclusion
For the reasons stated herein, we affirm the judgment of the trial court in part; reverse in part; and remand this matter for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] We note that the original statement dated September 8, 1996, demanded defendant to pay only $1179.25 in un-reimbursed medical expenses. Nine months later, plaintiff moved to enforce this obligation. The record does not explain, however, how the court arrived at the $3454.76 figure reflected in its order entered on June 13, 1997.
[2] The record does not explain why the tuition contribution requested from defendant increased to $16,990 for the 2006 fall semester.
[3] Once plaintiff establishes a prima facie case for additional support, the trial court must direct defendant to file and complete a case information statement, reflecting the most up-to-date financial information. R. 5:5-4(a); Isaacson v. Isaacson, 348 N.J.Super. 560, 586, 792 A.2d 525 (App.Div.2002), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002).