RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2054-15T1

M.D.,1

 Plaintiff-Respondent,

v.

P.D.,

 Defendant-Appellant.
___________________________

 Submitted January 11, 2017 – Decided October 13, 2017

 Before Judges Fuentes and Carroll.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Ocean
 County, Docket No. FV-15-0741-16.

 Michael R. Bateman, attorney for appellant.

 James R. Ozol, attorney for respondent.

 The opinion of the court was delivered by

FUENTES, P.J.A.D.

1
 Pursuant to Rule 1:38-3(d)(9), we use initials to protect the
parties' confidentiality.
 Defendant P.D. appeals from the Final Restraining Order (FRO)

issued by the Chancery Division, Family Part on November 6, 2015,

pursuant to the Prevention of Domestic Violence Act, (PDVA),

N.J.S.A. 2C:25-17 to -35. After hearing the testimony of both

parties, the trial judge found defendant committed the domestic

violent act of harassment, as defined under N.J.S.A. 2C:33-4, by

engaging in a pattern of conduct against plaintiff with the

intention of annoying and alarming her. The judge accepted

plaintiff's account of events as credible and rejected defendant's

testimony as not credible. Citing Silver v. Silver, 387 N.J.

Super. 112, 128 (2006), the judge found an FRO was necessary

because defendant's harassing behavior was "likely to occur again

if there's not a Restraining Order."

 In this appeal, defendant argues the judge erred because the

evidence presented at trial does not support a finding that

defendant intended to harass plaintiff within the meaning of

N.J.S.A. 2C:33-4a. Defendant also argues the issuance of final

restraints was not necessary to protect plaintiff against further

acts of domestic violence by defendant. Plaintiff argues the

trial judge properly found defendant harassed her in violation of

the PDVA. After reviewing the record developed before the trial

judge and mindful of our standard of review, we affirm.

 2 A-2054-15T1
 I

 The parties married in 1996 and had one child, a girl who was

nearly eleven years old at the time this matter was tried before

the Family Part. Plaintiff is a Brazilian national; she arrived

in the United States approximately in 2004. She is employed by

Ocean County in the Information Technology Department. Defendant

is employed by the New Jersey Department of Corrections at East

Jersey State Prison. The parties separated when plaintiff moved

out of the marital residence. Defendant filed for divorce sometime

thereafter.

 Plaintiff filed two Domestic Violence complaints against

defendant. The first complaint was filed on March 4, 2015, and

was predicated on an incident that occurred on February 28, 2015.

Plaintiff alleged defendant was "calling her and texting her

nonstop" and "showing up at her apartment and place of work

repeatedly." Plaintiff claimed that defendant "placed a GPS

device" on her car without her knowledge or consent. In addition

to these specific predicate acts, plaintiff also described a

history of harassment, intimidation, and disparaging language.

Plaintiff claimed defendant accused her of having an affair and

"threatened to have inmates at Rahway State Prison2 take care" of

2
 East Jersey State Prison is in the City of Rahway and is also
known as "Rahway State Prison."

 3 A-2054-15T1
the man with whom defendant believed plaintiff was romantically

involved.

 Although plaintiff obtained an ex parte temporary restraining

order (TRO) against defendant based on these allegations, the

matrimonial judge dismissed the domestic violence complaint by

mutual consent. Represented by their respective attorneys, the

parties entered into a Consent Order in the matrimonial action

that addressed all of the pendente lite issues associated with a

dissolution action, including alimony, child support, custody, and

parenting time of the minor child. This Consent Order dated March

24, 2015, also included the following provision imposing civil

restraints against defendant:

 There shall be civil restraints against
 Plaintiff, [P.D.],3 which shall include the
 following: The only communication between
 Plaintiff and Defendant shall be via text
 message and emails except in case of
 emergency.

Thus, in the parties' view, the civil restraints were intended to

replace the statutory protections afforded to plaintiff under the

PDVA.

 The spirit of compromise reflected in the March 25, 2015

Consent Order proved to be short lived. On October 28, 2015,

3
 The reference to P.B. as "Plaintiff" is due to his procedural
status in the matrimonial action. P.B. is a "defendant" in the
domestic violence complaint.

 4 A-2054-15T1
plaintiff filed a second domestic violence complaint against

defendant predicated on an event that occurred two days earlier.

According to plaintiff, on October 26, 2015, defendant called her

on her cellphone while she was at work and "accused her of having

an affair with her boss" and threatened that he was "going to do

something about this." Plaintiff believed that defendant's call

was triggered by the receipt of the Custody Neutral Assessment

(CNA) report ordered by the judge presiding over the matrimonial

case. The author of the CNA report recommended that the court

designate plaintiff as the Parent of Primary Residence.

 Plaintiff also claimed that on October 18, 2015, a date

scheduled for parenting time with his daughter, defendant arrived

an hour early and entered plaintiff's home "uninvited." Defendant

attempted to converse with plaintiff's mother, despite the fact

that she does not speak English and defendant does not speak

Portuguese. Plaintiff alleged she was alarmed and offended by

defendant's uninvited presence in her home. After he left her

residence, defendant called plaintiff on her cellphone and

allegedly told her: "I'm the man, nobody else; I wear the pants.

I'm the child's father, nobody else."

 Finally, plaintiff alleged that on September 25, 2015,

defendant called to cancel his parenting time date with the child.

However, when he learned from the child that plaintiff was going

 5 A-2054-15T1
to Water Street Bar, defendant decided to go to this bar with his

ten-year-old daughter. Plaintiff also claimed that defendant has

called her a prostitute and made disparaging remarks about her

ethnic background and national origin as a Brazilian.

 The Family Part conducted the FRO hearing over two non-

sequential days starting on November 9, 2015 and ending on November

16, 2015. Both parties were represented by counsel. Plaintiff

testified consistent with the allegations reflected in the two

domestic violence complaints. When plaintiff's counsel asked her

to describe the events that led her to file the first domestic

violence complaint, defense counsel objected, arguing that this

complaint had been dismissed by the matrimonial judge. This

prompted the following colloquy between defense counsel and the

judge:

 THE COURT: [If] . . . there [is] a case that
 says that if somebody voluntarily dismisses a
 T.R.O. and enters into a civil restraints, and
 thereafter the civil restraints are allegedly
 violated and there's a further alleged
 incident of domestic violence thereafter, then
 in litigating that later incident of domestic
 violence, the plaintiff is precluded from
 raising the original T.R.O. . . . allegations,
 I'm unaware of such a case.

 That . . . I don't think would be the right
 ruling because it's never been adjudicated by
 the [c]ourt and the parties may have
 consented, and . . . in this instance, the
 plaintiff, to say I'll dismiss that in
 consideration for civil restraints, but then

 6 A-2054-15T1
the civil restraints are violated and now, I'm
foreclosed as the plaintiff from raising the
prior allegations that I gave up because he
said he would stay away and he didn't?

. . . .

A Consent Order is different than a Judge
finding certain facts and making other
conclusions. It's just finding by the
[c]ourt, by the Judge, that this was
voluntarily entered into. That's the only
fact that you find when you, as a Judge, bless
a Consent Order. . . . [Y]ou don't find
anything about the underlying merits. You
find that the parties freely and voluntarily
agree to this Consent Order.

DEFENSE COUNSEL: . . . Your Honor, this was
an unusual circumstance because with the
Consent Order, . . . that became part and
parcel of the domestic violence, when, really,
it shouldn't.

The only question before the [c]ourt on March
24th, 2015, was there an act of Domestic
Violence and has the plaintiff proven that
act? The [c]ourt found that that didn't take
place. The case was dismissed, Your Honor.

THE COURT: It was a voluntary dismissal by the
plaintiff. The [c]ourt went through what I
go through and what I went through this
morning with others and none of them are
questions such as do you admit, plaintiff,
this didn't happen? Do you admit that there
was no domestic violence? All I'm asking
somebody when they dismiss it is you
understand you can be contacted? Are you
afraid at this time? None of those things
adjudicate the underlying allegations.
They're not discussed in a dismissal and the
Judge isn't finding as a fact that they didn't
occur or making any findings that they did or

 7 A-2054-15T1
 didn't, just that the party's freely and
 voluntarily dismissing them.

 So I'm going to allow [the domestic violence
 complaint] into evidence[.]
 Based on the testimony of the parties, the judge found

defendant engaged in the conduct plaintiff described in the two

domestic violence complaints with the intent to harass her. The

judge found that defendant went to the Water Street Grill with his

ten-year-old daughter with the specific purpose to annoy and alarm

plaintiff. The judge expressly found: "No other reason that I can

think of for him to do that or that has been suggested." The

judge also found that defendant threatened plaintiff that he would

inform the Ocean County Freeholders that she was having an affair

with a coworker with the intent of harassing her within the meaning

of N.J.S.A. 2C:33-4(a).

 With respect to the two-prong approach this court established

in Silver, supra, 387 N.J. Super. at 128, the judge held that

these acts by defendant were sufficient "to show a pattern."

These were not isolated incidents. The judge also found defendant

has a history of domestic violence as demonstrated by the two

domestic violence complaints filed by plaintiff. As to the second

prong of Silver, which requires the Family Part to find that a

restraining order is necessary to prevent further abuse, the judge

 8 A-2054-15T1
found these incidents of harassment by defendant were "likely to

occur again if there's not a Restraining Order."

 Against this factual backdrop, defendant seeks that this

court reverse the Family Part and vacate the FRO based on a lack

of evidence of harassment and a failure by plaintiff to prove, by

a preponderance of the evidence, that permanent restraints are

necessary to prevent future harm. We reject these arguments.

 Factual findings of the trial court should not be disturbed

unless they "are so manifestly unsupported by or inconsistent with

the competent, relevant and reasonably credible evidence as to

offend the interests of justice." Cesare v. Cesare, 154 N.J. 394,

412 (1998) (quoting Rova Farms Resort, Inc. v. Investors Ins. Co.,

65 N.J. 474, 484 (1974)). We are bound to defer to the trial

court's factual findings especially "'when the evidence is largely

testimonial and involves questions of credibility[,]'" Ibid.

(quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117

(1997)). It is well-settled that due to the Family Part's unique

jurisdiction, judges who decide these cases acquire a special

expertise in these matters. Id. at 413. Thus, reversal is

warranted only "if the court ignores applicable standards[.]"

Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008).

 Here, the judge carefully reviewed the testimonial evidence

presented by the parties and made specific findings based on that

 9 A-2054-15T1
evidence that are well-supported by the record. We discern no

legal basis to disturb them. We particularly endorse the judge's

ruling which declined to consider plaintiff's decision in the

matrimonial action to dismiss her first domestic violence

complaint and enter into a Consent Order that provided for civil

restraints, as the functional equivalent of a formal adjudication

finding that defendant did not commit an act of domestic violence.

 The record amply supports that defendant engaged in a pattern

of conduct with the express purpose to annoy and alarm plaintiff.

These acts of harassment "can cause great emotional harm and

psychological trauma." A.M.C. v. P.B., 447 N.J. Super. 402, 417

(App. Div. 2016).

 Affirmed.

 10 A-2054-15T1