**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5257-18T3

A.C.,[1]

    Plaintiff-Respondent,

v.

J.M.L.M.,

    Defendant-Appellant.

_____

Submitted November 2, 2020 - Decided December 21, 2020

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-1680-15.

Townsend, Tomaio & Newmark, LLC, attorneys for appellant (Jennifer M. Cornelius, of counsel and on the brief; Angela K. Halverson, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] Pursuant to Rule 1:38-3(d)(9) and (10), we identify the parties by initials to protect their privacy.

Defendant appeals from the provisions in the June 20, 2019 amended final restraining order (FRO) that required the parties to enroll their children in the West Orange school district and denied defendant's requests for a modification of his parenting time and a change in the children's surname. Because we conclude the court failed to conduct the required analyses regarding a change of circumstances and the best interests of the children, we reverse and remand for such findings. We affirm the court's ruling denying a change in the children's surname.

The parties, never married, are parents of two children – X.C., born in March 2013, and V.C., born in June 2014. Shortly after V.C.'s birth, plaintiff filed an application for an order establishing custody, parenting time, and child support.[2] In February 2015, the court granted plaintiff a FRO against defendant. Plaintiff was granted temporary custody of the children.

In June 2016, defendant filed an application to modify a December 15, 2015 order.[3] Defendant sought an increase in parenting time, a decrease in his

---

[2] We have not been provided with any order relating to that application.

[3] That order is not provided in the record.

child support obligation and to change the children's surname. It appears the parties were in court in October 2016 and resolved some of their issues.[4]

On June 15, 2017, the parties executed a consent order memorializing their prior agreement and resolving the remainder of their issues (consent order). Under the order, plaintiff was established as the parent of primary residence and defendant as parent of alternate residence.[5] They share joint legal custody. The parties had an alternate week parenting time schedule: on "week one" defendant had custody from Monday at 7:00 a.m. to Thursday at 7:00 p.m. On "week two" defendant had custody from Tuesday at 7:00 a.m. to Thursday at 7:00 p.m.[6]

The consent order stipulated that X.C. would attend Pre-K in the West Orange School District for the 2017-2018 school year. The party exercising parenting time was responsible for transporting X.C. to and from school. The parenting exchanges were at the West Orange police station.

On August 8, 2017, defendant sent a text message to plaintiff asking if she had enrolled X.C. in Pre-K as per the consent order. Plaintiff replied that she

---

[4] The record does not contain any order or transcript regarding that proceeding or settlement.

[5] During this time, plaintiff resided in West Orange and defendant lived in Kearny.

[6] Defendant worked on Fridays, Saturdays, and Sundays.

A-5257-18T3

had submitted the application and the child was on a waitlist. Plaintiff also said the school might not have availability until October or later. After learning that X.C. was on a waitlist, defendant enrolled the child in Pre-K in the Kearny school district. Plaintiff reiterated her desire for the child to attend school in her district. Defendant replied that he enrolled the child in Kearny because he did not want X.C. to fall behind in school.

The following August, defendant enrolled V.C. in Pre-K in Kearny and X.C. started kindergarten. Plaintiff did not object or take any action.

On March 5, 2019, defendant filed a motion seeking to modify the consent order and for the following relief: (1) finding plaintiff in violation of litigant's rights for her failure to adhere to the parenting time schedule; (2) naming him as parent of primary residence and modifying the current parenting time schedule to give him an additional overnight; (3) memorializing that the children shall attend school in his school district; (4) changing the surnames of the children to his surname; and (5) compelling plaintiff to pay his counsel fees and costs and reducing said amount to judgment.

The application was listed on the DV docket. At the initial hearing, in April 2019, the trial judge found no merit in defendant's assertion that plaintiff was violating his rights and insufficient evidence to grant defendant an

additional overnight.  The judge also denied defendant's application to change the children's surname.

In addressing the school enrollment issue, the judge stated the children should finish out the school year in Kearny and she would decide at a future time what school the children would attend in the fall.  The judge asked the parties to submit "information that would lead [her] to conclude that one district makes more sense, it's in the best interest of the children, than the other."  She explained:

> Generally, when it comes to things like that, the Court looks at some objective measurement of statistics, or -- or rankings.  All of that is subject to being challenged, and it doesn't mean it's written in stone.  Because there is -- there is intangibles, as well, such as where are the kids most of the day?  What's best for them.  In terms of the transportation, how is that working?
>
> And, as they get older, this stuff, you know, tends to evolve.  Right now is not a bad time to address it.  But, all things being equal, since the parties really do share equal custody, so to speak, as close as it can get without it being true equal custody, the -- the idea that one party is going to be inconvenienced by traveling, unless I'm not hearing something, is not going to be an overriding concern.  Because one of the other parties is going to have to travel.  That's not really going to be the issue.
>
> It's really about what's best for the kids.  And it's not just academics.  What other things are available to them.  What are the . . . extra[-]curricular activities.  What other opportunities might they have in Kearny

that they don't have in West Orange, or in West Orange
they don't have in Kearny.  Those are the kind of things
that will be important for the [c]ourt to know.  Okay?

At a subsequent hearing on June 5, 2019, defendant's counsel argued that the children should attend school in Kearny because defendant has the children for the majority of the weekdays.  Although counsel conceded West Orange is a better ranked school district, defendant contended that geography should be the paramount consideration.

The judge told the parties she was dissatisfied with what was presented to her.  She stated: "[W]hat I didn't hear addressed is . . . the initial agreement, since we were talking about agreements, was that they were going to go to [a] West Orange school.  So, nobody's talked about that.  That was the initial agreement."  She instructed the parties to prepare supplemental submissions addressing information about graduation rates, data about college admission, and activities the children would pursue on weekends.

The judge held a final hearing on June 20, 2019.  She stated that because the parties essentially had a shared 50-50 custody arrangement, there was not a parent of primary residence.  In reviewing the supplemental submissions of the parties, the judge again found them lacking.  She said plaintiff only provided a statement explaining the reasons the children should be in the West Orange

6

school system. Although defendant submitted information about Kearny High School and neighborhood opportunities, the court found the information was not helpful.

The judge stated she had re-read the consent order and the parties' text messages from 2017 regarding X.C.'s Pre-K enrollment. She found plaintiff had not agreed to any modification of the order. Therefore, she found "there has not been a material change that would allow that order to be amended, in the way that the defendant is asking for it to be amended." Therefore, she ordered plaintiff to enroll the children in the West Orange school district. The judge denied any changes to the parenting time schedule, telling the parties they could file a new application.

On appeal, defendant contends the court erred in failing to consider the change of circumstances that have occurred since the execution of the consent order to warrant a modification in parenting time and continued enrollment in the Kearny school district. In addition, defendant asserts the court failed to consider the best interests of the children in its determination of the school enrollment issue and in denying a change of surname.

Because family courts "[have] special jurisdiction and expertise in family matters, [we] should accord deference to family court factfinding." Cesare v.

Cesare, 154 N.J. 394, 413 (1998). The trial court's findings of fact and conclusions of law will only be disturbed if they are "manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence." Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974). However, if the trial court "ignores applicable standards, we are compelled to reverse and remand for further proceedings." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008). We always determine whether there is sufficient credible evidence in the record to support the trial court's factual determinations. Rova Farms, 65 N.J. at 484.

After conducting three hearings concentrating on which school district the parties' children should attend, the court determined the provision in the consent order should control. Defendant contends the court failed to consider the change of circumstances that were sufficient to warrant a modification of the consent provision regarding school enrollment.

Under the 2017 consent order, the parties agreed to enroll their oldest child in Pre-K in the West Orange school district for the 2017-2018 school year. However, after learning the child was on a waitlist for the program, defendant enrolled X.C. in Pre-K in Kearny. The child completed the Pre-K year in Kearny

and continued on to kindergarten there for the 2018-19 school term. The parties' youngest son was enrolled in Pre-K in Kearny for 2018-19.

Plaintiff did not take any action to change the school situation. The matter only came before the court when defendant filed an application in March 2019 for a change of parenting time and a memorialization of the school enrollment. By that time, X.C. was close to finishing kindergarten; V.C. was completing the Pre-K program.

Despite the court's considerable attention to the matter, it failed to apply the best interests standard to the parties' circumstances. The consent order only addressed the oldest child's school attendance and only applied to one year – 2017 to 2018. Clearly, the parties intended and needed to revisit the issue for the following school year. At that time, both children would be attending school. Furthermore, the court did not address the practicality of the custody arrangement vis-a-vis the school location. Defendant had custody of the children on most school nights, an important fact to consider in any analysis.

Generally, a party must demonstrate changed circumstances to warrant relief from the provision of a consent order. Martindell v. Martindell, 21 N.J. 341, 353 (1956). If a movant shows a sufficient change of circumstances, the

court engages in a "best interest analysis." Baures v. Lewis, 167 N.J. 91, 113 (2001).

Once a movant meets the prima facie burden to show a change of circumstances, the court must then consider the agreement's terms "in the context of the circumstances at the time of the drafting and to apply a rational meaning in keeping with the 'expressed general purpose'" of the provisions. Pacifico v. Pacifico, 190 N.J. 258, 266 (2007). Where the movant has shown a change in circumstances, the court must consider the modification in light of the best interests standard articulated under N.J.S.A. 9:2-4.

Here, given the limited scope of the parties' consent order regarding the children's school attendance, it is arguable that defendant did not even need to demonstrate changed circumstances. Because the consent order did not address either child's school attendance for the 2018-19 school term, the parties needed to either agree on the children's school going forward or apply to the courts for a resolution. When the children began school in Kearny in the fall of 2018, it could be inferred the parties had come to an agreement. Indeed, it was defendant who moved before the court near the end of the 2019 school year for an order establishing Kearny as the children's school district.

10

In the absence of an agreement, the trial court was required to conduct a best interests analysis to determine the parties' parenting time issues and school enrollment. With children of such a young age, there is little utility in comparing college acceptance rates, scholarship opportunities, and extracurricular activities. See Levine v. Levine, 322 N.J. Super. 558, 566-67 (App. Div. 1999) (holding that where joint custodians cannot agree on a choice of schools, the issue must be decided consistent with the child's "best interests" and, in that context, "any evaluation of a school district is inherently subjective" and involves "more than its teacher-student ratio or State ranking.").

We cannot properly review the court's decision without a fact-finding and determination of what is in the children's best interests. Nearly nineteen months have passed since the court's decision, and the children are yet in another school term. We must therefore remand to the family court to develop a thorough record. The court should determine whether the parties need to provide additional written submissions. Thereafter, a plenary hearing should take place, with testimony from the parties as to their current circumstances. The family court judge should determine which school district is in the children's best interests to attend. Once that determination is made, the court should consider whether any modifications to the parents' parenting time is warranted.

We briefly address defendant's appeal from the order denying a change in the children's surname. "[I]n renaming disputes between parents who agreed on a surname at birth but find themselves later in a dispute over whether to alter the surname, the proper standard to apply is the best interests of the child." Emma v. Evans, 215 N.J. 197, 221 (2013). The parent seeking to change the name of the child bears the burden of showing by a preponderance of the evidence that the name change is in the child's best interest. Id. at 222.

Defendant asserts it is in the best interests of the children to have his surname because he is acting as their custodial parent. Even if defendant was deemed the primary custodial parent, the Emma court instructed that courts should not give presumption to a custodial parent's name choice. Id. at 221. Because defendant did not proffer any other reason for the name change, we agree with the trial court that he did not meet his burden of proof to support a change of the children's surname.

Affirmed in part, reversed in part, and remanded to the trial court for proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION