**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1495-16T4

VICTORIA TOLSTUNOV,

    Plaintiff-Respondent,

v.

ROSTISLAV VILSHTEYN,

    Defendant-Appellant.

_____

        Argued April 9, 2018 — Decided July 30, 2018

        Before Judges Sabatino and Ostrer.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Morris County,
        Docket No. FM-14-1000-15.

        Lawrence H. Kleiner argued the cause for
        appellant.

        Ari H. Gourvitz argued the cause for
        respondent (Gourvitz & Gourvitz, LLC,
        attorneys; Ari H. Gourvitz and Elliot H.
        Gourvitz, on the brief).

PER CURIAM

    In this matrimonial appeal, defendant-husband Rostislav

Vilshteyn appeals from aspects of three overlapping trial court

orders, including a final judgment of divorce (FJD). On October

24, 2016, the court entered an omnibus order that dismissed defendant's pleadings with prejudice for discovery violations; granted plaintiff partial summary judgment, mirroring provisions in a Partial Marital Settlement Agreement (PMSA), which, defendant argues, the parties intended to be temporary; allocated the parties' marital debt; and awarded attorney's fees to plaintiff. A second order denied defendant's cross-motion to reinstate his answer and counterclaim. The court also entered a FJD, which incorporated the PMSA, and the omnibus order. Defendant contends the court erred in (1) failing to provide a statement of reasons for its decision; (2) denying his motion to reinstate his pleadings and instead dismissing them with prejudice; (3) granting partial summary judgment; (4) enforcing the PMSA; and (5) awarding plaintiff attorney's fees. We reverse and remand for further proceedings.

## I.

Plaintiff-wife Victoria Tolstunov filed her divorce complaint in February 2015, after less than seven years of marriage, including a period of separation. The parties have one child. Plaintiff alleged adultery as the sole basis for the divorce. She cited a January 2015 text message from defendant acknowledging he had a girlfriend.

During the marriage, defendant was convicted of Medicaid fraud and incarcerated between September 2013 and June 2014, and again between September 2015 and August 2016. See State v. Vilshteyn, No. A-4202-11 (App. Div. Aug. 20, 2013) (affirming conviction to second-degree health care claims fraud, N.J.S.A. 2C:21-4.2 and -4.3(c), and third-degree Medicaid fraud, N.J.S.A. 30:4D-17(b)). Defendant was sentenced to a five-year prison term and ordered to pay $200,000 in restitution, fines, penalties and assessments. Ibid.[1] Defendant was returned to custody in September 2015 after allegedly violating the terms of the Intensive Supervision Program (ISP). He was released again to ISP in August 2016, after he was exonerated of the violation.

Only some aspects of the extensive procedural history are relevant to the issues on appeal. The court entered default after defendant failed to answer the complaint. Rather than enter default judgment as plaintiff thereafter proposed pursuant to Rule 5:5-10, the court allowed, and then granted, defendant's motion to vacate default. In August 2015, defendant filed an answer denying plaintiff's factual allegations related to adultery, but did not assert a defense to the cause of action. He filed a

---

[1] Defendant contended the remaining restitution was $83,000 in the fall of 2016.

A-1495-16T4

counterclaim seeking divorce based on irreconcilable differences causing a breakdown of the marriage for more than six months.

In its October 2015 order, the court compelled the parties to exchange discovery, and defendant to pay plaintiff's reasonable attorney's fees associated with the motion, which it later set at $4583.19. A case management order a month later acknowledged that defendant was incarcerated, but ordered him to pay the full cost of a custody expert, and to file a completed case information statement (CIS) in a week.

In February 2016, on plaintiff's motion and pursuant to Rule 4:23-5(a)(1) and Rule 1:10-1, the court again dismissed and suppressed defendant's pleading. In response to plaintiff's motion, defendant contended he had complied with discovery, and provided copies of his newly minted responses to plaintiff's interrogatories, custody interrogatories, request for admissions, and notice to produce. The court credited plaintiff's contention that defendant's responses were incomplete, but the court did not specify the deficiencies. The court noted that defendant was incarcerated, but found no "viable explanation" for his failure to comply. The court awarded plaintiff fees of $2585. The court noted that "the parties may have enjoyed a luxurious lifestyle, [but] it was obviously based on criminal proceeds."

A-1495-16T4

In June 2016, invoking Rule 4:23-2 and Rule 4:23-5(a)(2), plaintiff sought dismissal and suppression with prejudice, contending defendant: failed to comply with the court's prior order to pay fees; failed to provide proof that he filed an amended tax return as required (although he provided a copy of the return); and failed to answer discovery, without specifying the deficiencies. Plaintiff also sought partial summary judgment on issues of child support, custody, alimony, marital debt, and medical insurance. She sought $322 per week in child support and allocation of the cost of the child's school and extracurricular activities; sole legal and physical custody of the child; mutual waiver of alimony; and allocation of the marital debt. As for medical insurance, plaintiff requested that defendant obtain his own; she would provide it for the child. She also sought to prohibit defendant from claiming the child as a dependent for tax purposes.

However, plaintiff postponed consideration of the motion, as the parties were engaged in discussions that ultimately led to the defendant and plaintiff signing a PMSA in early July, and a second one later that month.[2] The first PMSA reflected defendant's

---

[2] Defendant's signature on the first was dated July 6, 2016, and his second on July 28, 2016. Plaintiff's signatures were not dated.

A-1495-16T4

review, including his initials on each page, and next to individual provisions. The first PMSA included a mutual waiver of alimony. It also granted plaintiff sole legal and physical custody of the child, denied defendant parenting time, and barred him from contacting the child until further order or agreement of the parties. A separate provision acknowledged the parties' rights to seek post-judgment relief.

The parties mutually waived their rights to take further discovery and defendant acknowledged that he had "not substantially answered the discovery propounded," and his pleadings were "dismissed." Plaintiff stated she was "completely satisfied with the financial disclosures from her Husband." The PMSA stated that each party was to be responsible for their own counsel fees "associated with the dissolution of the marriage, except as otherwise stated in paragraph 6.2 above" — although there is no paragraph 6.2 — but granted a right to fees for enforcement of the PMSA.

The first agreement included defendant's handwritten cross-outs of numerous provisions, including those: setting his child support obligation at $250 a week; imputing $100,000 in annual income to him and $49,000 to plaintiff "for the sole purpose of [the child support] . . . calculation"; obliging defendant to pay sixty-four percent of the cost of the child's Montessori tuition

and extracurricular activities, and stating he would be entitled to receive information about the activities and school when he was released from prison; and suspending enforcement while he was incarcerated. Also crossed out were provisions obliging defendant to obtain $300,000 in life insurance; to pay sixty-four percent of the child's unreimbursed medical costs; identifying marital debt and allocating it equally; and affirming prior fee awards. The various cross-outs were in addition to changes reflected in the typescript, typical of a "redline" version. The word "Partial" was handwritten on the agreement's title page.

The second agreement mirrored the first, but it left intact, without further revision, provisions that were previously crossed-out. The second version restored the provision pertaining to child support and imputation of income, except the part stating that enforcement would await defendant's release remained crossed out. Instead, it was annotated, "Judge to decide." Also, restored were the provisions on life insurance and the costs of unreimbursed medical expenses, Montessori and extracurricular activities. The provision on marital debt remained crossed out, but it now included the annotation, "Judge to decide."

Two months after defendant's release from incarceration, he sought to reinstate his pleadings. He blamed his incarceration for his failure to pay ordered fees and his incomplete production

of documents. He said that his previous responses were truthful, although he incompletely produced documents, because he had no access to them while incarcerated. He stated that he provided additional financial and tax information after his release. Defendant did not object to the dissolution of his marriage, but he contested plaintiff's allegation of adultery.

Defendant objected to plaintiff having sole legal and physical custody of the child, asserting — contrary to plaintiff's allegations — he was an attentive and responsible father before his incarceration, and his lack of contact was plaintiff's fault. Defendant challenged the PMSA provision on custody, and other "financial agreements":

> I do not dispute that while incarcerated on the wrongful I.S.P. violation I also agreed to give the Plaintiff sole legal and physical custody, as well as agreeing to a suspension of my visitation pending my incarceration. However that agreement, as well as various financial agreements, was solely conditioned upon my release, which has since occurred on August 26, 2016. . . . Therefore, as I no longer agree to the terms of the partial Marital Settlement Agreement, I am respectfully requesting that the Court litigate this matter on the merits, finding that the Settlement Agreement was nothing more than an interim agreement pending my release from jail.

Also in October 2016, plaintiff's attorney asked the court to grant her motion for partial summary judgment, in accordance

with the PMSA's terms. Counsel argued that defendant did not comply with discovery as he still had not filed an updated CIS, and did not amend his answers to interrogatories or notice to produce, and instead "dumped" a volume of documents on plaintiff's counsel after he filed his cross-motion. In an opposing certification, plaintiff itemized the parties' marital debt, and requested defendant be ordered to pay sixty-four percent of it. She also alleged that defendant had no relationship with the child before his incarceration. She asked the court to enforce the custody agreement in the PMSA. Plaintiff stated "I am not denying that [d]efendant someday will have the ability to see his son, but I do not believe that there is anything wrong in asking him to be drug tested, and go through psychiatric and substance abuse evaluation(s) . . . ."

At oral argument, plaintiff's counsel argued that the court should dismiss defendant's pleadings with prejudice for failure to answer discovery. He asserted that defendant's failures were "willful" and "deliberate." Further, counsel argued that the PMSA was not a pendente lite agreement because it was drafted in anticipation of defendant's release from jail. Counsel added that defendant should be responsible for sixty-four percent of the marital debt, and plaintiff's attorney's fees. Plaintiff's counsel also requested that the court grant the parties' divorce

9                                                                    A-1495-16T4

and incorporate the PMSA, based on plaintiff's June 2016 certification.

Defendant's counsel argued that defendant's wrongful incarceration played a central role in the prolonged history of the divorce proceeding, and defendant should not be responsible for all of plaintiff's attorney's fees. Counsel argued that while defendant signed the PMSA, it was only meant to be a partial agreement that controlled while he was in jail. Counsel acknowledged that this stipulation was not written in the agreement, but argued that defendant only agreed to plaintiff having custody of the child while he was in jail because he did not want the child visiting him there.[3] Counsel urged the court to consider the provision in the PMSA, which states the parties are free to file post-judgment motions, as evidence that the agreement was modifiable and not final.

Defense counsel further argued that defendant complied with discovery, providing financial documentation for the previous three years — commenting that plaintiff's request for documents from the past five years was "overly burdensome" — and asserted

---

[3] Defendant stated in his certification, "While incarcerated from 2013 to 2014, the Plaintiff . . . brought my son only one time to see me after multiple repeated requests to see him." But, during his second incarceration, he acquiesced to his counsel's request that he suspend visitation when he was held in the Passaic County jail, to avoid traumatizing or causing the child stress.

that the documents were not "dumped" on plaintiff's counsel, but rather were appropriately annotated and organized. Counsel also represented that defendant filed an amended 2014 tax return. She offered defendant's testimony on this fact, but the court declined to hear it.[4] On the issue of marital debt, counsel argued that the allocation agreed upon in the PMSA with respect to the child's expenses should not automatically apply.

The court found no support in the PMSA's text for defendant's argument that the agreement was intended only to apply temporarily. Recognition of defendant's right to seek post-judgment relief did not render the custody provision temporary. "Where there's an agreement between parties getting divorced . . . the [c]ourt's required to enforce the terms of the agreement that are fair and that are expressed. I can't rewrite the agreement." However, the court made no explicit findings regarding the fairness of the agreement, or that the parties entered into it voluntarily and knowingly.

The court held that discovery was irrelevant, except for those issues left open by the PMSA. The court awarded attorney's fees, stating only: "I'm satisfied that plaintiff is entitled to

_____

[4] Defendant's 2014 tax return, submitted to this court in plaintiff's appendix, is on an "Amended U.S. Individual Income Tax Return" form.

an award of counsel fees.  This case has gone on too long.  This — I mean she's had to pay over $11,000 in accumulating fees because of debt."  The court noted that the PMSA allocated sixty-four percent of certain expenses to defendant, and thirty-six percent to plaintiff, and the ratio of imputed income was slightly higher.

As for the cause of action, the court stated, "I am going to grant divorce to plaintiff. . . .  I'm going to grant it based upon her certification.  It's clear she's entitled to a divorce."  The court added, "And that will give defendant an opportunity to move forward with his application to change the custody arrangement that he agreed on in July."  The court reserved judgment on the distribution of marital debt.

Two days later, the court issued the orders referenced above without a further statement of reasons.  The FJD, as submitted by plaintiff's counsel, and which the court entered, stated that plaintiff had proved a cause of action for divorce "as alleged in the Complaint."  The FJD stated that the court reviewed plaintiff's complaint and her sworn certification, without any reference to defendant's certifications.  The court incorporated the PMSA, again without any finding that the parties entered into it voluntarily and knowingly, and expressly declining to rule on its fairness and reasonableness.

A-1495-16T4

Notwithstanding the court's statement that discovery was irrelevant, the court denied defendant's motion for reinstatement and dismissed and suppressed his pleading with prejudice pursuant to Rule 4:23-2, for violating the court's October 20, 2015 order, and Rule 4:23-5(a)(2), for discovery violations. The court granted plaintiff partial summary judgment on the points originally requested in her June 2016 motion, but adjusted the relief in accordance with the terms in the PMSA. In addition, the court granted partial summary judgment as to the marital debt, assigning defendant sixty-four percent of the costs, totaling $18,721.31. The court also ordered defendant to pay plaintiff's attorney's fees, totaling $9,035, incurred in connection with the partial summary judgment motion.

This appeal followed.

## II.

### A.

We begin with our standard of review. Generally, we defer to the Family Part's fact findings that are rooted in its familiarity with the case, its opportunity to make credibility judgments based on live testimony, and its expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). However, we review legal issues de novo, Slutsky v. Slutsky, 451 N.J. Super. 332, 345 (App. Div. 2017), including issues of contract

interpretation of a matrimonial settlement agreement, see Quinn v. Quinn, 225 N.J. 34, 45 (2016) (stating that contract principles apply to the interpretation of matrimonial settlement agreements); Kieffer v. Best Buy, Inc., 205 N.J. 213, 222-23 (2011) (stating that the interpretation of a contract is an issue of law that an appellate court reviews de novo). We also owe no deference if the trial court overlooks governing legal standards, Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008), or enters an order that lacks evidential support, Mackinnon v. Mackinnon, 191 N.J. 240, 254 (2007).

Furthermore, the trial court's failure to articulate adequate findings of fact and conclusions of law pursuant to Rule 1:7-4 generally necessitates a reversal and remand. See Strahan v. Strahan, 402 N.J. Super. 298, (App. Div. 2008) (reversing and remanding for failure to make adequate findings of fact and conclusions of law regarding child support calculation and imputation of income); Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996) ("The absence of adequate findings, as here, necessitates a reversal to allow the trial judge to reconsider the alimony decision."). Applying these standards, and for the reasons set forth below, we are constrained to reverse and remand, as the trial court's orders suffer from procedural and legal error, and

are generally unsupported by adequate findings of fact and conclusions of law.

B.

We turn first to the PMSA. We are guided by well-established principles. "Settlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn, 225 N.J. at 44. We generally apply basic contract principles in interpreting matrimonial settlement agreements. Id. at 45. However, those principles are tempered by principles of equity. Id. at 45-46. As the Court observed, "To be sure, 'the law grants particular leniency to agreements made in the domestic arena and vests 'judges greater discretion when interpreting such agreements.'" Ibid. (quoting Pacifico v. Pacifico, 190 N.J. 258, 266 (2007)). "A narrow exception to the general rule of enforcing settlements as the parties intended is the need to reform a settlement agreement due to 'unconscionability, fraud, or overreaching in the negotiations of the settlement.'" Id. at 47 (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)).

A court is obliged to ascertain that the parties have voluntarily and knowingly entered into a matrimonial settlement agreement, because such a finding is a precondition of enforceability. See id. at 39 (stating that PSA providing for alimony termination upon cohabitation is "enforceable when the

15

parties enter such agreements knowingly and voluntarily"); id. at 55 (stating agreement is enforceable absent "evidence of overreaching, fraud or coercion").

The court is generally obliged to take testimony, in order to reach such findings. See, e.g., Gere v. Louis, 209 N.J. 486, 501-03 (2012) (noting court's finding based on testimony); Ehrenworth v. Ehrenworth, 187 N.J. Super. 342, 343-46 (App. Div. 1982) (setting forth extensive voir dire of parties before accepting marital settlement agreement); see also 1 Gary N. Skoloff & Laurence J. Cutler, New Jersey Family Law Practice, § 1.9A(2) at 1:288 (15th ed. 2012) ("In cases in which the agreement is to be incorporated, the court will take testimony to ascertain whether the parties have knowingly, willingly and voluntarily entered into the agreement . . . ."). A boilerplate recital in the PMSA itself that the parties have executed the agreement voluntarily is of no consequence, particularly when, as here, the statement is not sworn or certified. See R. 1:6-6.

Here, the court incorporated the PMSA into the FJD without taking any testimony or making any essential findings regarding whether the parties entered into it knowingly and voluntarily. On that basis alone, incorporation of the PMSA was error.

However, in this case, the court was obliged to do more than ascertain whether the parties entered the agreement voluntarily

A-1495-16T4

and knowingly. Defendant focused his challenge to the PMSA on the provision in which he not only forfeited any claim to legal and residential custody of his child, but agreed to avoid all contact with his child. Defendant contended he believed the provision applied only while he was incarcerated. We agree that there is no textual support for his claim. Indeed, the text itself undermines the claim, by explicitly referencing his release from incarceration in other provisions, but not as to custody and parenting time.

Nonetheless, the court was required to review the custody and parenting time provision because it affected not only defendant's rights; it affected the welfare of the child. "In custody cases, it is well settled that the court's primary consideration is the best interests of the children." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007); see also Colca v. Anson, 413 N.J. Super. 405, 414 (App. Div. 2010). A "child cannot be prejudiced by an agreement between parents." Kopak v. Polzer, 4 N.J. 327, 333 (1950); see also Dolce v. Dolce, 383 N.J. Super. 11, 18 (App. Div. 2006) (stating that parties may not "bargain away a child's right to support because the right to support belongs to the child, not the parent . . . ."); Gulick v. Gulick, 113 N.J. Super. 366, 371 (Ch. Div. 1971) (stating that "the conscience of equity will not

permit present needs of children to be limited by the agreement of the [parties]").

A court shall not enforce parents' custody arrangement if it is contrary to the child's best interests. N.J.S.A. 9:2-4(d) ("The court shall order any custody arrangement which is agreed to by both parents unless it is contrary to the best interests of the child."). A child is entitled to maintain and develop a relationship with each parent. See Cooper v. Cooper, 99 N.J. 42, 50 (1984) (noting "mutual right of the child and the noncustodial parent to develop and maintain their familial relationship"); N.J.S.A. 9:2-4 (finding "it is in the public policy of this State to assure minor children of frequent and continuing contact with both parents"). "The agreement between the parties has no binding effect insofar as visitation is concerned. The question is always what is in the best interests of the children no matter what the parties may have agreed to." Hallberg v. Hallberg, 113 N.J. Super. 205, 209 (App. Div. 1971).

The parties' respective certifications created a factual dispute as to defendant's relationship with his child; defendant's capacity to serve as a responsible parent; and plaintiff's

cooperation in nurturing the father-child relationship.[5]  In ascertaining the child's best interests, the court may not resolve material factual disputes without a plenary hearing.  See K.A.F. v. D.L.M., 437 N.J. Super. 123, 137 (App. Div. 2014).  "Even where a party waives a plenary hearing, 'the matter of visitation is so important, especially during the formative years of a child, that if a plenary hearing will better enable a court to fashion a plan of visitation more commensurate with a child's welfare, nonetheless it should require it.'"  Id. at 138 (quoting Wagner v. Wagner, 165 N.J. Super. 553, 555 (App. Div. 1979)).  The trial court's failure to conduct a plenary hearing on whether the custody agreement serves the child's best interests, even if defendant entered it knowingly and voluntarily, requires reversal.  See id. at 140.

In sum, it was error for the court to incorporate the PMSA wholesale into the FJD.  As a result, we are constrained to vacate the FJD.  Moreover, inasmuch as the PMSA was apparently the basis

---

[5]  We acknowledge plaintiff's allegation, which defendant contested, that defendant suffered from a substance abuse problem. However, even if that were so, the record does not support a conclusion that it was in the best interests of the child to have zero contact with defendant. Options such as supervised parenting time, or parenting time conditioned upon appropriate drug testing, might enable the child to maintain a relationship with defendant, and should be explored on remand.

of the court's grant of partial summary judgment, that order must be reversed as well.

C.

We are also constrained to reverse the trial court's discovery-related orders. As noted, as a discovery sanction, the court granted plaintiff's motion to dismiss and suppress with prejudice defendant's counterclaim and answer, and denied defendant's motion to reinstate.

We review the trial court's discovery ruling for an abuse of discretion and shall not disturb it absent an injustice. See Bender v. Adelson, 187 N.J. 411, 428 (2006) (reviewing for an abuse of discretion a "trial court's decision to bar defendants' requested amendments to their interrogatory answers and deny a further discovery extension"); Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995) (stating appellate courts shall review the dismissal of a complaint with prejudice "for discovery misconduct" under an abuse of discretion standard and shall not "interfere unless an injustice appears to have been done"). A court abuses its discretion when it makes a decision "without a rational explanation." Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002).

Courts should order dismissal "sparingly" because it is "the ultimate sanction." Id. at 514. Even if there is a discovery

20

violation, in deciding whether to "suspend the imposition of sanctions," a court should consider whether there was "absence of a design to mislead"; "absence of the element of surprise if the evidence is admitted"; and "absence of prejudice from admission of the evidence."  Wymbs v. Twp. of Wayne, 163 N.J. 523, 544 (2000).  Furthermore, "[i]f there is a bona fide dispute over the responsiveness of the answers, then it is error to dismiss the complaint."  Adedoyin v. Arc of Morris Cnty., 325 N.J. Super. 173, 181 (App. Div. 1999).

Here, the court provided no explanation for its discovery-related decisions.  It was obliged to review the competing certifications, to ascertain whether: the specific discovery requests were reasonable and not unduly burdensome; defendant's incarceration provided good cause for any shortcomings in his responses; defendant ultimately complied fully or reasonably with the discovery requests; and plaintiff abided by the procedural requirements of Rule 4:23-5.  To the extent defendant failed to comply with discovery — the court was required to determine whether the violations were significant enough to justify the extreme sanction of suppression and dismissal.  See id. at 175 (reversing and remanding dismissal under Rule 4:23-5(a)(1) for further factfinding, as trial court did not explain why it dismissed instead of compelling more specific answers).

Furthermore, the court stated in its oral decision that discovery was "irrelevant." If so, then the basis for dismissing and suppressing defendant's pleadings is all the more perplexing. Lastly, if the PMSA is enforceable, then according to its plain terms, plaintiff waived any further objection to defendant's discovery responses.

In sum, we reverse the court's discovery-related orders and remand for reconsideration. The parties may update their discovery requests and disclosures given the passage of time while the appeal has been pending.

D.

Even if the PMSA is deemed enforceable on remand, the court's allocation of marital debt must be reversed. As with other aspects of the court's ruling, the decision lacks any explanation that would permit appellate review.

The allocation of responsibility for the parties' marital debts is subject to the same factors as the equitable distribution of assets. See Slutsky, 451 N.J. Super. at 348; Ionno v. Ionno, 148 N.J. Super. 259, 262 (App. Div. 1977); see also Rothman v. Rothman, 65 N.J. 219, 232 (1974) (stating that a court must first identify the property subject to distribution; determine its value; then allocate it most equitably). Once the court identifies the debts that are subject to distribution, it must allocate them

22

after considering the sixteen statutory factors identified in N.J.S.A. 2A:34-23.1.  Elrom v. Elrom, 439 N.J. Super. 424, 444 (App. Div. 2015).

"In every case . . . the court shall make specific findings of fact on the evidence relevant to all issues pertaining to asset eligibility or ineligibility, asset valuations, and equitable distribution . . . ."  N.J.S.A. 2A:34-23.1.  Here, the court made none.  The court did not explain the basis for identifying and quantifying the various marital debts; nor did the court explain its reasoning for allocating sixty-four percent of them to defendant.

We recognize that a 64:36 formula was used to allocate certain expenses in the PMSA, however, the PMSA reflects a lack of agreement to apply that ratio to marital debts.  Even if the court concluded that the ratio of the parties' respective actual or imputed incomes was 64:36, the parties' relative incomes constitute just one factor in the equitable distribution analysis.  See N.J.S.A. 2A:34-23.1(g).  For these reasons, the court's allocation of marital debt must be reversed and reconsidered.

E.

In the order granting partial summary judgment, the court awarded plaintiff $9035 in fees "for this application."  The court's sole explanation for the award was its oral observation

23                                      A-1495-16T4

that "[t]his case has gone on too long" and plaintiff had incurred fees. The award of counsel fees is discretionary, and should be disturbed "only on the rarest occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)); see also Barr v. Barr, 418 N.J. Super 18, 46 (App. Div. 2011). However, a court abuses its discretion when it fails to consider the factors set forth in Rule 5:3-5(c). See B.G. v. L.H., 450 N.J. Super. 438, 464 (App. Div. 2017) (stating that "[i]n considering a request for legal fees, the court must consider the factors set forth in Rule 5:3-5(c)"). Consequently, we are constrained to reverse the fee award and remand for reconsideration. See Clarke v. Clarke ex rel. Costine, 359 N.J. Super. 562, 572 (App. Div. 2003) (remanding for reconsideration of fee award where court "did not address the pertinent factors under Rule 5:3-5(c), and failed to make the required findings set forth therein") (citing Rule 1:7-4). Furthermore, if the court finds that the PMSA is enforceable, it must consider the significance of the parties' mutual waiver of attorney's fees expressed in that document.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION