**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1791-18T1

PAMELA S. SPINELLI-
THORNTON,

     Plaintiff-Respondent,

v.

SCOTT D. ROSKAM,

     Defendant-Appellant.

_____

Submitted January 21, 2020 – Decided February 18, 2020

Before Judges Sabatino and Geiger.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FM-21-0376-11.

Scott D. Roskam, appellant pro se.

Eric A. Wood, attorney for respondent.

PER CURIAM

     Defendant Scott D. Roskam appeals from a Family Part order denying his

motion to:  (1) recalculate child support effective July 28, 2017; (2) declare their

son emancipated; (3) compel plaintiff Pamela S. Spinelli-Thornton[1] to fully reimburse defendant for her share of their children's expenses, as an offset against child support; (4) terminate his obligation to contribute to their son's college expenses; and (5) award him counsel fees and costs. We affirm.

The parties were married on August 8, 1991 and divorced on June 22, 2011. The final judgment of divorce incorporated the terms of a marital settlement agreement (MSA). The parties have two children, a son, born in October 2000, and a daughter, born in October 2003.

Defendant alleged plaintiff's previous attorney contacted him on July 28, 2017, with a request to recalculate child support. Defendant responded by email three weeks later to dispute the proposed increase because the initial order was entered when both children were under the age of twelve. In the same email, defendant accused plaintiff of violating paragraphs 3.4(a) and 3.5 of the MSA, which provide for unreimbursed medical costs and extracurricular activities costs, respectively, and paragraph 1.8, which memorializes the parties' agreement to not interfere in each other's relationship with the children.

In correspondence sent during September 2017, defendant provided plaintiff's counsel with supporting documentation for the unreimbursed costs

---

[1] Plaintiff was formally known as Pamela S. Roskam.

A-1791-18T1

and the recalculation of child support. In response, plaintiff's counsel advised that plaintiff was not working due to medical reasons and there was "no reason" to provide her tax information because alimony had terminated. After two weeks of silence, defendant followed up with plaintiff's counsel on October 5, and again on October 20, 2017. Both attempts elicited promises of forthcoming replies that never materialized, so defendant retained counsel to represent him.

Counsel wrote to plaintiff's attorney in January 2018 to further pursue resolution of the matter. The following month, the attorney advised defendant's counsel that she no longer represented plaintiff. Defendant's counsel then sent his January letter directly to plaintiff. Defendant claims, subsequent to plaintiff receiving the letter, he and plaintiff resolved the issues and plaintiff verbally agreed to modify child support to $270 per week for both of their children effective January 1, 2018. An undated text message from plaintiff indicates she also agreed to pay $50 per month toward reimbursement.

Thereafter, defendant's counsel drafted a consent order for the child support modification and sent it to plaintiff on February 16, 2018. Defendant asserts plaintiff never returned the signed order but remitted three payments of $50 for a total of $150 before payment ceased in May 2018. The last payment

A-1791-18T1

received was a $100 money order sent by the son that was addressed to "Satan," living in "Hell."

Defendant and his son had a strained relationship following the divorce. The son claimed he wanted nothing to do with defendant. Their relationship deteriorated to the point that in May 2016, plaintiff and the son sought to change his middle and last names before he turned eighteen. Subsequently, on June 2, 2018, defendant learned the son ceased attending high school, which was confirmed ten days later by the school's guidance counselor.

Defendant contacted plaintiff on June 14, 2018, to question why their son dropped out of high school. Plaintiff explained he was on a half-day schedule under a medical 504 plan, yet was ahead enough in his credits to graduate early; however, because the school district required him to make up gym class to graduate, plaintiff, the school, and the son's doctor agreed it was in his best interest to pursue a GED. On June 16, 2018, the son received his high school diploma. He also received a FAFSA[2] grant and enrolled in the County College of Morris for Fall 2018.

On August 27, 2018, defendant's counsel sent plaintiff another letter regarding her supposed failure to reimburse defendant and to explain why their

_____

[2] Free Application for Federal Student Aid.

son dropped out of high school. The letter included a consent order that proposed deducting $100 from the weekly $270 in child support and applying it to the outstanding unreimbursed costs. The letter further instructed that, if the signed consent order was not returned by September 7, 2018, defendant would file a motion and apply for attorney's fees.

On September 11, 2018, plaintiff's newly retained counsel wrote to defendant's counsel requesting specific information and documentation relevant to the unreimbursed costs. Defendant claimed such information was previously supplied to plaintiff's prior counsel, and to plaintiff herself, but his counsel sent the information to plaintiff's new attorney anyway by letter dated October 1, 2018. On October 15, 2018, defendant's counsel again advised that if a response was not provided defendant would file a motion and apply for attorney's fees.

Defendant then moved seeking the following relief: (1) recalculation of child support effective July 28, 2017; (2) reimbursement from plaintiff for her alleged share of the children's expenses, as an offset against child support; (3) emancipation of the parties' son; (4) termination of defendant's obligation to contribute to their son's college expenses; and (5) an award of attorney's fees and costs.

5

Plaintiff asserts filing the motion violated paragraph 1.15 of the MSA, which required the parties to "participate in mediation through the Warren County Family Court Mediation Program prior to filing any Motion with the Court." Plaintiff opposed the motion and cross-moved for reimbursement from defendant for his share of the children's expenses.

Judge Haekyoung Suh issued an order and eighteen-page written statement of reasons that granted defendant's motion, as modified, for reimbursement from plaintiff to offset child support and denied the other requested relief. Plaintiff's cross-motion was granted, as modified.

As to defendant's motion to recalculate child support, the court first turned to paragraph 3.2 of the MSA, which provides:

> Child support shall be reviewed and adjusted, if appropriate, every two to three years in accordance with the Child Support Guidelines. Child support shall also be reviewed at such time as alimony is terminated. In any future review, income from all sources, including bonus or commission income, shall be factored into the guidelines.

The court noted the parties appeared to negotiate the recalculation of child support, yet defendant failed to establish by a preponderance of the evidence that plaintiff agreed to recalculate the support effective to any date. The court noted the absence of a signed consent order governing the recalculation. The

court further observed the MSA is vague, requiring the parties to recalculate "if appropriate" without any timeline. Citing N.J.S.A. 2A:17-56.23a,[3] the court determined any recalculation of child support would be modified retroactively to defendant's filing date, rather than July 28, 2017.

Defendant alleged the court originally imputed $600 per week income at the time of divorce. Defendant claimed the court should impute a salary of $47,000 based upon the average salary for a dental assistant, or $792 per week to plaintiff. The court found defendant offered no proof that this amount was based on the average salary of a dental assistant. Therefore, the court reasoned it was unable to determine whether a substantial and permanent change of circumstances justifying an increase in the imputation of income occurred. Accordingly, the court found defendant failed to satisfy his burden of proof to establish changed circumstances and denied his motion to recalculate child support.

---

[3] N.J.S.A. 2A:17-56.23a provides in pertinent part:

> No payment or installment of an order for child support . . . shall be retroactively modified by the court except with respect to the period during which there is a pending application for modification, but only from the date the notice of motion was mailed either directly or through the appropriate agent.

As to defendant's request to emancipate their son, the court reviewed N.J.S.A. 9:17B-3[4] and noted the presumption is rebuttable through proof of a dependent relationship between the child and parent. The court found that although the son was eighteen years old, he attended college full-time, and remained in the sphere of influence of his parents due to his financial dependence. On that basis, the court denied emancipation.

Next, the court ruled on defendant's motion for $7683 in reimbursement for instrument rentals, French lessons, medical expenses, and orthodontist expenses, and plaintiff's cross-motion for $9614 for college costs, books, car expenses, and Verizon bills incurred by the son. The court began by noting paragraph 3.4(a) of the MSA provides: "The children's unreimbursed medical, dental, orthodontic, hospitalization, eye care, prescriptions, psychiatrist or psychological counseling expenses shall be shared 57% paid by the Husband and 43% paid by the Wife pursuant to the Child Support Guidelines after the Wife pays the first $250.00 per child per year of such expenses."

Paragraph 3.5 of the MSA provides: "The parties shall consult and agree on the sharing of the children's extracurricular activities, such as, sports,

---

[4] Instructing, "every person 18 or more years of age shall in all other matters and for all other purposes be deemed to be an adult." Ibid.

uniforms, hobbies, sports gear and/or footwear, tutoring, lessons, music instruction, instrument rental, cheerleading and extracurricular school activities." Paragraph 3.6 states: "The parties shall consent and agree on the sharing of auto related expenses as each child becomes eligible for their driving permit." Finally, the court observed paragraph 3.8 provides:

> The parties shall confer with each other and each child and make a joint decision as to where the children will attend college. The parties do expect to apply for any and all financial aid on behalf of the children that is available for the children and further agree to be bound by the cost of in-state tuition such as Rutgers University. Future college expenses include but shall not be limited to tuition, registration and lab fees, room and board, laptop computer, books and reasonable transportation expenses on behalf of the children. College costs shall also include a sharing of expenses in the same fixed percentages for college applications, SAT preparation classes or tutoring and up to five visits to prospective colleges. Each child shall be required to apply for all financial aid, scholarships, grants and student loans which shall be deducted from the gross college expenses before allocation of costs to the parties.

As for plaintiff's request for reimbursement of college expenses, the court declared paragraph 3.8 ambiguous because it indicated the parties were to jointly decide where the children would attend school, yet the last sentence mandated sharing of costs. The court found the intent of the parties was to share the college expenses "so long as the children applied for financial aid and did not

9

exceed the cost of in-state tuition." The court also noted, despite the parties not agreeing to confer about incurred college expenses, plaintiff provided a text message indicating defendant's awareness of the college expenses, to which defendant stated: "Sounds like he needs to apply for financial aid and get a job. If he has time to miss a majority of school he should have plenty of time to work and pay for his own insurance and car bills, books, etc." The court found defendant responsible for his share of the college expenses.

The court denied plaintiff's request for reimbursement for car-related expenses because there was no proof the parties consented and agreed on such expenses, as required by paragraph 3.6 of the MSA. Similarly, the court denied plaintiff's request for reimbursement of the Verizon bills because neither the MSA nor the supplied text messages indicated defendant agreed to be responsible for those expenses.

Next, the court analyzed defendant's request for reimbursement. At the start of its analysis, the court invoked the doctrine of laches to reduce plaintiff's responsibility for expenses to those incurred from 2016 until the time of the court's decision. The court noted that defendant did not make a formal request for reimbursement until August 2018. Despite claiming to have incurred expenses dating back to 2012, his motion was not filed until October 2018. The

10

court found "defendant's delayed application prejudices plaintiff's ability to support her contention" that "there was a verbal agreement that the parties would not seek reimbursement from one another." The court further found that "plaintiff has been unemployed for many years, and she would be prejudiced by suddenly having to pay for unreimbursed expenses dating back to 2012. Had defendant brought his action earlier, plaintiff would have been better equipped to prepare her defense and budget accordingly." Accordingly, the court determined that plaintiff should only be responsible for reimbursement for expenses incurred from 2016 to the present.

The court acknowledged the medical, orthodontic, and extracurricular expenses requested by defendant were covered under the MSA and that plaintiff did not object to the extracurricular expenses he listed. The court further noted all of defendant's listed expenses were supported by proofs linked to a specific provider; conversely plaintiff failed to attach proofs for listed the expenses or attached documents that did not indicate the relevant child or payee.

After calculating the parties' respective expenses, the court found plaintiff owed defendant $2044 for their daughter's orthodontia work, $2249 for their son's medical and orthodontia work, and $1609 for both children's instrument rentals and French lessons, while defendant owed plaintiff $859 for the son's

11

school and medical costs. Therefore, on balance, plaintiff owed defendant $5043.

The court granted defendant's motion and ordered that reimbursement take effect as a credit against future expenses incurred, as a matter of equity, and in consideration of plaintiff's unemployed and disabled status. That is to say, the amount would serve "as a credit going forward against any reimbursement that plaintiff might seek from defendant, such as college or medical expenses." If the credit went unrealized after the daughter's twenty-third birthday, defendant may seek the remaining balance from plaintiff.

Finally, the court addressed defendant's motion for counsel fees, applying the factors set forth in Rule 5:3-5(c).[5] The court noted defendant earned $2616

---

[5] Rule 5:3-5(c) states:

> "In determining the amount of the fee awarded, the court should consider . . . the following factors:  "(1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

a week while plaintiff was unemployed and living on disability. Accordingly, factors one and two weighed against defendant's application due to his superior financial position. The court found neither party acted in bad faith. The court found factors four and six favored an award of fees to defendant because the fees he incurred and the amount he paid were reasonable when compared to similar legal services performed by local attorneys with comparable experience. The court found factor five inapplicable because there were no previously awarded fees, and factor seven in equipoise because both parties were partially successful in their applications. The remaining factors were either inapplicable or in equipoise. Because a majority of factors did not favor defendant's application, the court denied his motion. This appeal followed.

Defendant argues the court erred by: (1) applying the doctrine of laches sua sponte to unreimbursed medical expenses incurred prior to 2016; (2) declaring the MSA ambiguous as it applied to sharing college expenses; and (3) failing to relieve defendant of his obligation to contribute to the son's college expenses due to their strained relationship.

Our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We afford substantial deference to the factual findings of a Family Part judge because of their special expertise in family matters. Id.

A-1791-18T1

at 413. The Family Part's "substantial discretion" in determining child support applies equally to compelling a parent to contribute to their child's college costs. Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 588 (App. Div. 2016) (quoting Gotlib v. Gotlib, 399 N.J. Super. 295, 308 (App. Div. 2008)).  "We must accept the Family Part's determination concerning a parent's obligation to contribute toward college tuition, provided the factual findings are supported by substantial credible evidence in the record and the judge has not abused his or her discretion." Ibid. (citing Gac v. Gac, 186 N.J. 535, 547 (2006)); accord Cesare, 154 N.J. at 411-12.

The equitable doctrine of laches is applicable in divorce proceedings. Schlemm v. Schlemm, 31 N.J. 557, 572 (1960).  The policy underlying the doctrine of laches is to discourage stale claims.  Gladden v. Bd. of Trs., Pub. Emps.' Ret. Sys., 171 N.J. Super. 363, 371 (App. Div. 1979) (citing Flammia v. Maller, 66 N.J. Super. 440.453-54 (App. Div. 1961)).  The doctrine of laches is properly "invoked to deny a party enforcement of a known right when the party engages in an inexcusable and unexplained delay in exercising that right to the prejudice of the other party."  Knorr v. Smeal, 178 N.J. 169, 180-81 (2003) (citing In re Kietur, 332 N.J. Super. 18, 28 (App. Div. 2000)).  "The key factors . . . are the length of the delay, the reasons for the delay, and the 'changing

conditions of either or both parties during the delay.'" Id. at 181 (quoting Lavin v. Bd. of Educ., 90 N.J. 145, 152 (1982)). As a matter of equity, "[w]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court." Fox v. Millman, 210 N.J. 401, 418 (2012) (alteration in original) (quoting Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004)).

Guided by these well-established principles, we affirm substantially for the cogent reasons expressed by Judge Suh in her comprehensive statement of reasons, which are fully supported by the record and applicable principles of law. We add the following comments.

Defendant argues the trial court erred by applying the doctrine of laches to limit his claim to expenses incurred in or after 2016. We disagree. The trial court found the first two factors were present. The court also explained the prejudice to plaintiff that would result if laches were not invoked to limit defendant's claim.

Defendant's reliance on Gotlib is misplaced. Gotlib did not focus on whether the plaintiff's claims for reimbursement were barred by laches due to possible prejudice. 399 N.J. Super. at 305-06. Here, the court identified the prejudice to plaintiff if she were forced to defend against defendant's stale

claims.[6] Defendant offered no reason for the delay in filing his application. The invocation of laches is a fact-sensitive matter of equity directed to the sound discretion of the trial court. The court's findings and conclusion are supported by the record. We discern no abuse of discretion or other basis to disturb the court's application of laches.

Defendant next argues it was error for the court to find paragraph 3.8 of the MSA ambiguous in terms of college expenses. The son received a FAFSA grant and his college tuition falls within the in-state tuition referenced in the MSA, as it is less than the cost of tuition at Rutgers University. Defendant contends he was excluded from the decision-making process in 2018, beginning with the son dropping out of high school in his junior year and ending with him receiving a FAFSA grant when he enrolled in the County College of Morris. Defendant argues his cooperation and involvement in the college selection process was necessary to obligate him to contribute to the son's college expenses.

In finding paragraph 3.8 of the MSA ambiguous, the court noted that while "it requires the parties to reach a joint decision as to where the children will

---

[6] It is perhaps revealing defendant did not explain the reason for the delay in filing his application.

A-1791-18T1

attend college, the sharing of costs is mandatory by the last sentence of the paragraph." For that reason, the court concluded, "[t]he intent of the parties was to share the costs of the college expenses so long as the children applied for financial aid and did not exceed the cost of in-state tuition. The parties did not agree to confer about college expenses incurred." The court also noted plaintiff provided a text message indicating defendant's awareness of the college expenses.

"In general, financially capable parents should contribute to the higher education of children who are qualified students." Newburgh v. Arrigo, 88 N.J. 529, 544 (1982). The cost of the county college that the son attended was reasonable. See ibid. (recognizing that "county and community colleges . . . provide educational opportunities at reasonable costs"). Indeed, the parties agreed "to be bound by the cost of in-state tuition such as Rutgers University." Defendant does not contend the county college was more expensive than Rutgers, or that the son should have attended a less expensive college. Nor does he contend that the son should have attended a different college offering a more suitable curriculum. Moreover, the relationship between defendant and his son had obviously deteriorated since the divorce. In this context, it was reasonable to interpret paragraph 3.8 as a mandate that costs would be allocated, and thus

shared by the parties, even if they did not confer in the selection of the college the son attended.

Defendant argues the trial court erred by not relieving him of his obligation to contribute to the son's college expenses. During oral argument before the trial court, defendant claimed the MSA should not control given his strained relationship with his son, citing Gac, 186 at 542 and Black v. Black, 436 N.J. Super. 130 (Ch. Div. 2013). The trial court distinguished Black and explained it applied to the more specific issue of whether a court could "compel a parent and child to attend counseling to repair their strained relationship, while simultaneously enforcing the parties' agreement that the parent pay for the child's college expenses," citing Black, 436 N.J. Super. at 147. The court then reasoned, Gac "does not address a situation when an agreement between the parties mandates a party's contribution towards college expenses, and further states '[a] relationship between a non-custodial parent and a child is not required for the custodial parent or the child to ask the noncustodial parent for financial assistance to defray college expenses.'" (quoting Gac, 186 N.J. at 546).

The record demonstrates that when the son applied for financial aid through FASFA, defendant told him, "Just pretend I am dead" and refused to provide his social security number for the application. Even so, the frequent

text messages and emails defendant presented to show the strained relationship with his son demonstrate that a relationship nonetheless exists to some degree. In addition, defendant paid many of his son's medical and recreational costs in 2016 and 2017.

In determining whether a child has become emancipated, "the essential inquiry is whether the child has moved 'beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own.'" Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997) (quoting Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995)). Here, the trial court found the parties' son remained within the sphere of influence of his parents and was dependent upon them. The record supports those findings.

The son lived at home with plaintiff and attended community college during the relevant time. We concur with the trial court's finding that he was not emancipated. See Patetta v. Patetta, 358 N.J. Super. 90, 95-96 (App. Div. 2003) (affirming denial of father's motion to emancipate eighteen-year-old son who continued to live at home and attend college). Accordingly, we discern no basis to overturn the trial court's decision to maintain defendant's obligation to contribute to the son's college expenses in accordance with paragraph 3.8 of the MSA.

19

We likewise find no basis to overturn the denial of defendant's counsel fee application.  The trial court's analysis of the <u>Rule</u> 5:3-5(c) factors is supported by the record.  We discern no abuse of discretion.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1791-18T1