# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2717-23

V.R.R.,[1]

    Plaintiff-Respondent,

v.

A.A.,

    Defendant-Appellant.

_____

Submitted May 29, 2025 – Decided June 19, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FV-11-1467-24.

Hartman Duff, LLC, attorneys for appellant (W. Les Hartman, on the brief).

Respondent has not filed a brief.

PER CURIAM

---

[1] We refer to the parties by their initials.  R. 1:38-3(d)(10).

In this one-sided appeal, defendant A.A. appeals from an April 5, 2024, final restraining order (FRO) entered in favor of plaintiff V.R.R. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

We recite the facts from the two-day FRO hearing. Both parties were self-represented at trial. Defendant and plaintiff dated for three years. The relationship ended in July 2022.

Plaintiff testified regarding prior incidents of domestic violence during the relationship. Plaintiff explained the parties argued on or about July 30, 2022. On that day, plaintiff was studying alone at home. Defendant called her phone incessantly after she declined to speak with him. Defendant then texted he was coming to plaintiff's house to talk to her. Plaintiff told defendant not to show up at her house.

Despite being told he was not welcome, defendant went to plaintiff's house and "snuck" in using a passcode. Defendant held plaintiff captive in her house for three hours. Plaintiff testified defendant threw her on the bed, pinned her arms above her head, and said he wanted to have sex with her. Defendant also took away plaintiff's electronic means of communication. When plaintiff tried to leave the bedroom, defendant grabbed her and pulled her onto his lap. Only

2

after plaintiff agreed to unblock defendant's telephone number did he release her. The judge found plaintiff's description of defendant's behavior on July 30, 2022, was consistent with defendant's conduct during the FRO trial.

Plaintiff also described an earlier incident of domestic violence when defendant demanded she clean his new shoes. Defendant yelled and called her a "whore" and a "dumb bitch." He also threw the shoes at plaintiff.

Both parties live in the same municipality. Defendant's place of employment is located about five minutes from plaintiff's house. During her testimony, plaintiff made it clear she wanted nothing to do with defendant. On the other hand, based on her observation of defendant during the trial, the judge found defendant remained "obsessed" with plaintiff.

In her domestic violence complaint, plaintiff alleged defendant committed the predicate act of harassment by lurking near her home on March 20, 2024. Plaintiff recorded a video of a man she believed to be defendant wandering around her neighborhood. Because plaintiff was not one-hundred-percent certain the person she saw on March 20, 2024, was defendant, plaintiff followed him. Plaintiff told the judge she knew the individual was defendant after she looked him in the eyes.

A-2717-23

The judge reviewed plaintiff's video as part of the trial evidence.[2] The judge concluded "clearly the defendant's profile [was] shown in the video." The judge explained plaintiff was "afraid [defendant was] going to hurt her and trap her and abuse her the way that he did in July [2022]." Even though defendant did not trap plaintiff on March 20, 2024, the judge concluded plaintiff had "a reasonable belief" defendant would enter "her house without her permission putting her through the same abuse that she experienced back in July of 2022." Because the judge found defendant was "too close" and "still too obsessed" with plaintiff and "lack[ed] . . . control over his impulses and his aggression," she concluded plaintiff required an FRO to ensure her safety.

Based on her observation of defendant's demeanor during the trial, the judge found defendant displayed "very troubling impulse issues." The judge explained defendant did "not like to be told what to do," could not refrain from interrupting throughout the trial, and could not "control his impulses." The judge concluded in "the prior history when [defendant] was upset and agitated, . . . he did exactly what the plaintiff said he did which [was] keep her in the

_____

[2] Defendant's appendix failed to include a copy of plaintiff's video admitted as evidence during the FRO trial.

house and pin her to the bed and take away her devices so she couldn't communicate."

At trial, defendant claimed he was not the person seen in plaintiff's video. In support of his misidentification argument, defendant proffered his own video, marked as D1 in evidence.[3]  After viewing the video, the judge concluded D1 "did not support [d]efendant's argument that some other person that looked like him was skulking and pacing around [p]laintiff's house on the date of the predicate act."  The judge explained D1 only showed "[d]efendant's car leaving his work parking lot" and "did not show what [d]efendant was wearing that day."

Because D1 appeared "incomplete," the judge adjourned the trial to allow defendant to produce additional evidence in support of his misidentification argument.  However, defendant failed to produce any additional video footage from March 20, 2024.  Instead, defendant offered testimony from his boss.

Defendant's boss testified on the second day of trial.  However, the boss claimed he no longer had access to the video footage from the date of the incident.  The boss further testified he had no independent recollection of

---

[3]  Defendant failed to include D1 in his appellate appendix.  Thus, we rely on the judge's description of the images depicted in that video.

defendant's clothing on March 20, 2024. Rather, the boss described defendant's typical work attire.

The judge found the boss's testimony negatively affected defendant's credibility. In the absence of corroborating video footage from defendant's place of work establishing defendant's attire on March 20, 2024, and the boss's inability to recall defendant's clothing on that date, the judge concluded defendant failed to proffer credible and sufficient evidence in support of his misidentification argument.

Based on the testimony, the judge found the following events occurred on March 20, 2024. Defendant had pizza with his father just before 5:00 p.m. Defendant subsequently got into his car and left work at 5:00 p.m. Thereafter, defendant "drove five minute[s] away to [plaintiff's] house . . . and walked down her block and then came back up the block."

The judge disbelieved the testimony of defendant's mother that defendant arrived home from work at 5:05 p.m. based on the mother's body language during her testimony. The judge concluded the mother was "trying to protect" her son from the entry of an FRO.

The judge found defendant "was intentionally on that block in front of [plaintiff's] home pacing up her street in front of her house" and did so "to alarm

6

and annoy" plaintiff. The judge determined plaintiff "was alarmed and annoyed seriously so" by defendant's behavior on March 20, 2024. The judge concluded defendant's actions on that day were "very similar [to] actions that took place previously between these parties where [defendant] went into [plaintiff's] home without her permission and attacked her."

According to the testimony, defendant knew plaintiff regularly studied in her car while parked outside her house. The judge concluded defendant "wandered" around plaintiff's street "with the intention of scaring her, intimidating her, alarming and annoying her" and "potentially put[ting] her in the same position that she was in back in July of 2022."

Under the totality of the circumstances, the judge found defendant's intention on March 20, 2024, was "to harass, annoy, and seriously alarm" plaintiff, constituting harassment under N.J.S.A. 2C:33-4. The judge stated defendant was "still clearly angry based on his behavior . . . in the courtroom" and remained "obsessed" with plaintiff. Because defendant was "skulking around her house" and "work[ed] five minutes away" from plaintiff's house, the judge found plaintiff was "in immediate danger to both her person and her property." Although the recent incident occurred two years after the earlier incident, the judge concluded defendant's conduct in March 2024 was too similar

to his conduct in July 2022 and was "obviously intend[ed] to cause [plaintiff] annoyance and alarm."

The judge found plaintiff was "very, very credible," displayed "a very open demeanor," and did not evade the judge's questions. According to the judge, plaintiff "had an accurate recollection not only of the events in question but the prior history" of the parties' relationship. The judge concluded there was "an inherent believability to [plaintiff's] testimony."

On the other hand, the judge found defendant not credible. The judge "had very serious credibility and behavioral concerns" regarding defendant's testimony. The judge noted defendant "throughout the course of the entire proceeding absolutely could not contain his behaviors, his impulses, his inability to allow the [c]ourt or the [plaintiff] to speak." The judge stated defendant was unable to "control himself if he [was] emotionally upset or frustrated." On several occasions during the trial, the judge admonished defendant to refrain from interrupting the proceedings.

Additionally, the judge found defendant avoided answering her questions. Further, the judge determined defendant lacked candor because he frequently lowered his eyes and spoke softly when responding to questions. Based on her observations regarding defendant's impulsive and uncontrolled behaviors during

8

the trial, defendant's inconsistent trial testimony, and defendant's failure to adduce any credible evidence supporting a misidentification defense, the judge deemed defendant's testimony not credible.

On appeal, defendant argues the judge erred "in considering facts not within the complaint." He further asserts the judge erred in finding he committed the predicate act of harassment. He also contends the judge deprived him of due process by preventing him from cross-examining witnesses. Additionally, he claims the judge improperly discounted the testimony presented in his defense. We disagree.

In reviewing an FRO "following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Where "the court ignores applicable standards, we are compelled to reverse and remand for further proceedings." Gotlib v. Gotlib, 399 N.J. Super. 295, 309 (App. Div. 2008). We review a trial judge's legal conclusions de novo. C.C. v. J.A.H., 463 N.J. Super. 419, 428-29 (App. Div. 2020).

In support of granting an FRO, the plaintiff must satisfy both prongs under Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).  Under the first prong, a plaintiff is required to prove, by a preponderance of the credible evidence, a defendant committed one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a).  Id. at 125.  If the judge finds a defendant committed a predicate act under the statute, the second inquiry "is whether the court should enter a restraining order that provides protection for the victim."  Id. at 126.

Here, plaintiff alleged harassment as the predicate act under the PDVA. A person is guilty of harassment if, with purpose to harass another, he or she "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with the purpose to alarm or seriously annoy such other person."  N.J.S.A. 2C:33-4(c).  "[A] finding [of harassment] must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient."  N.T.B. v. D.D.B., 442 N.J. Super. 205, 222 (App. Div. 2015) (quoting J.D. v. M.D.F., 207 N.J. 458, 487 (2011)).

In this case, the judge rendered detailed credibility findings in her April 5, 2024, decision placed on the record and her August 19, 2024, written amplification of reasons pursuant to Rule 2:5-1(d).  We defer to a Family Part

10

judge's credibility determinations, which are based on the judge's observations of the parties and witnesses at trial. Gnall v. Gnall, 222 N.J. 414, 428 (2015).

The judge expressly found defendant, two years after his relationship with plaintiff ended, continued to be obsessed with plaintiff and unable to control his impulses regarding plaintiff. The judge concluded defendant purposely skulked around plaintiff's house on March 20, 2024, in a manner eerily reminiscent of a prior incident of domestic violence in July 2022 that left plaintiff afraid of defendant.

The judge determined plaintiff met her burden of demonstrating defendant committed the predicate act of harassment based on plaintiff's credible testimony and documentary evidence. She found defendant engaged in a course of alarming conduct on March 20, 2024, by lurking about plaintiff's house well after their relationship ended. The judge further concluded defendant's conduct was committed with the purpose to alarm or seriously annoy plaintiff.

A purpose to harass may, in some cases, "be inferred from the evidence" and informed by "[c]ommon sense and experience." State v. Hoffman, 149 N.J. 564, 577 (1997). "[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." J.D., 207 N.J. at 484. The PDVA "require[s] that 'acts claimed by a plaintiff to be domestic violence

11

. . . be evaluated in light of the previous history of violence between the parties.'" Cesare, 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).

Having reviewed the record, we discern no abuse of discretion in the judge's finding defendant committed the predicate act of harassment. The judge's findings were based on substantial, credible evidence presented during the trial. The judge expressly found plaintiff's testimony credible and defendant's testimony not credible.

Further, the judge rejected defendant's argument that he was not the person seen in plaintiff's video. Despite the judge granting a trial continuance for defendant to proffer credible evidence supporting his misidentification argument, defendant failed to do so. The judge found the testimony proffered by defendant's parents and employer, recalling the exact clothing worn by defendant on March 20, 2024, lacked credibility.

The judge properly relied on the prior history of domestic violence, specifically defendant holding plaintiff hostage in her home for several hours in July 2022. The judge found defendant's conduct in March 2024 evidenced his continued obsession with plaintiff more than two years after the relationship ended. Moreover, the judge found defendant's wandering around plaintiff's

house was done with the purpose to harass, annoy, and alarm plaintiff.  She determined defendant's conduct was intended to purposefully evoke the memory of his holding plaintiff captive in her own home for several hours in July 2022.

We also reject defendant's argument that the judge erred in finding plaintiff satisfied the second <u>Silver</u> prong in support of the FRO.  Plaintiff told the judge she feared defendant.  Specifically, plaintiff testified she feared defendant would break into her home again as he did in July 2022.

Despite the passage of time, the judge found defendant continued to be fixated on plaintiff.  The judge also found defendant's behavior during the trial indicated a complete lack of impulse control, which supported plaintiff's fear defendant would again break into her home and cause her harm.  On this record, we perceive no basis to disturb the judge's findings that plaintiff required protection from future harm under the second <u>Silver</u> prong in support of the entry of an FRO.

We also reject defendant's claim that the judge impermissibly expanded the prior history of domestic violence beyond the information contained in plaintiff's March 20, 2024, domestic violence complaint and TRO application. In the March 2024 TRO application, plaintiff reported defendant engaged in "similar acts in the past" and provided a docket number for an earlier TRO.

A-2717-23

Defendant did not deny knowledge of the allegations in plaintiff's prior TRO stemming from the July 2022 incident. Under the circumstances, we are satisfied the judge did not violate defendant's due process rights by considering the July 2022 domestic violence incident.

Nor do we agree defendant was deprived of his right to cross-examine plaintiff or plaintiff's witnesses. Rather, the judge asked defendant to present his questions through her and not ask questions directly to plaintiff. The judge explained "if you have any questions that you want me to pose to [plaintiff,] I can do that." However, the judge appropriately declined to ask questions absent an explanation of the relevance of the questions. It was defendant's own impulsive behaviors, multiple interruptions, and outbursts during the trial that impacted his cross-examination of witnesses.

To the extent we have not addressed any of defendant's arguments, those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2717-23